**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

ELVIS PRESLEY ENTERPRISES,
INC., EPPF, LLC and GUESTHOUSE AT
GRACELAND, LLC,

      Plaintiffs,

v.                         No. _____

CITY OF MEMPHIS,

      Defendant.

_____

**VERIFIED COMPLAINT FOR DAMAGES**
_____

      Plaintiffs, Elvis Presley Enterprises, Inc., EPPF, LLC and Guesthouse at Graceland, LLC,

state the following for their Complaint against Defendant, City of Memphis:

**THE PARTIES**

      1.      Plaintiff, Elvis Presley Enterprises, Inc. ("EPE"), is a Tennessee corporation, with

its principal place of business located at 3734 Elvis Presley Boulevard, Memphis, Tennessee.

      2.      Plaintiff, EPPF, LLC ("EPPF"), is a Delaware limited liability company that is

authorized to do business in Tennessee.  EPPF is an affiliate of EPE.

      3.      Plaintiff, Guesthouse at Graceland, LLC ("Guesthouse"), is a Delaware limited

company that is authorized to do business in Tennessee.  Guesthouse at Graceland is an affiliate

of EPE.

      4.      As EPPF and Guesthouse both are affiliates of EPE, all three (3) Plaintiffs

collectively will be referred as to EPE throughout this Complaint.

      5.      Defendant City of Memphis ("The City") is a municipal corporation and a

governmental entity organized under the laws of the State of Tennessee. The City may be served

with process by serving the Mayor of the City of Memphis, Jim Strickland, in care of the Office of City Attorney, 125 North Main Street, Room 336, Memphis, Tennessee 38103.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights) for claims based on 42 U.S.C. § 1983, and 42 U.S.C. § 1367 for EPE's state and common law claims.

7.     The acts and omissions giving rise to the matters asserted herein occurred in this jurisdiction, accordingly venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### THE GRACELAND PROJECT

8.     EPE owns and/or operates certain retail property located on Elvis Presley Boulevard, in the Whitehaven neighborhood in Memphis, Shelby County, Tennessee, that is popularly known as Graceland.  Graceland, which is an internationally recognized, National Historic Landmark, is one of America's premier tourist destinations, a major employer in the Whitehaven community, and a key economic driver of the City of Memphis.

9.     Graceland has been in Memphis, Shelby County, Tennessee, for over one-half of a century; and for generations to come, Graceland undoubtedly will be right there in Whitehaven, Memphis, Shelby County, Tennessee providing jobs and otherwise doing its part to stimulate the local economy.

10.     Consistent with EPE's long-term commitment to keeping Graceland an international tourist attraction and to continue bringing tourists and jobs to Whitehaven, Memphis, for decades, in 2014-2015, EPE embarked on a comprehensive, multi-phased

revitalization plan, which included, *inter alia*, building a new hotel and a new 300,000 square foot retail, exhibition, and museum facility.

11.     EPE proposed to redevelop Graceland to improve the user experience and ensure the long term success of Graceland by constructing a 450-room hotel (formally known as The Guest House at Graceland), equipped with first-class convention and concert facilities, a theatre, as well as redeveloping and upgrading the existing museum facilities and archive studio ("The Graceland Project").

12.     In order make The Graceland Project financially feasible, EPE, in compliance with both state law and local rules, submitted to The City, the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby ("EDGE"), and Shelby County, Tennessee ("The County"), EPE's Economic Impact Plan for Graceland Economic Development Area ("The Graceland Economic Plan"), along with an Economic Impact Analysis for The Guest House at Graceland.  *See* TENN. CODE ANN. § 7-53-312(a)-(b). Contained within The Graceland Economic Plan was EPE's request for approval of a plan for tax increment financing through EDGE, which would provide funds to pay for a portion of the costs relating to implementation of The Graceland Project.

13.     The Graceland Economic Plan subsequently was approved by (a) EDGE on November 29, 2014; (b) the Memphis City Council ("The City Council") on December 2, 2014; and (c) the Board of County Commissioners of Shelby County, Tennessee, on December 8, 2014.  *See id.*, § 7-53-312(f).

14.     Via these approvals, commitments and agreements from and with EDGE, The City, The County, and the State of Tennessee, in 2015 a Tax Increment Financing (TIF) District ("The Graceland TIF"), a new Tourism Development Zone (TDZ) ("The Graceland TDZ"), and

Tourism Development Zone surcharge were established for The Graceland Project.  And EDGE ultimately approved EPE for $124 million in financing to be supported by the new TDZ, TDZ surcharge, The Graceland TIF, and other revenue.

15.     As of the date of this Complaint, EPE, consistent with The Graceland Economic Plan, has completed the initial phase of the Graceland Project.  The Guest House at Graceland has been constructed and is in full operation.  The Convention Center (as defined below) is under construction.  And visitors and tourists are steadily visiting the museum, retail and other facilities at Elvis Presley's Memphis.

16.     Per the terms of EPE's agreement with EDGE, The City, The County, and The Graceland TIF, incremental property taxes currently are being captured for use on The Graceland Project.  Specifically, fifty percent (50%) of the excess property taxes over the Base Tax Amount (as defined in The Graceland Economic Plan) are being allocated for the benefit of The Graceland Project.

17.     Consistent with the purposes behind TIFs and TDZs and other public finance vehicles, The Graceland Project has spurred on other significant development and revitalization projects in the Whitehaven community.  And because The Graceland TIF applies solely to The Graceland Project Property, the additional revenue generated by the property tax increases from those other projects is available to be used for general municipal purposes.

18.     Additionally, much to the benefit of Whitehaven and the Memphis economy, The Graceland Project has evolved such that EPE now is in a position to expand The Graceland Project, and the scope of the theater, concert, and entertainment facilities will be of a more substantial nature.

19.     But neither the fact that the scope of this phase of the Graceland Project has expanded, nor the fact that EPE already is positioned to commence this work, comes as a surprise to those persons and entities that are familiar with The Graceland Project and TIFs in general.  Quite the contrary, additional growth and development opportunities such as this are precisely what economic growth engines like EDGE yearn for, which is why EDGE has historically been so supportive of The Graceland Project.

20.     To that end, in late Spring/early Summer 2017, EPE advised The City, The County, and EDGE that EPE would be submitting to EDGE a Supplement to Economic Impact Plan for Graceland Economic Growth Area ("Graceland's Supplemental Economic Plan").

21.     By way of Graceland's Supplemental Economic Plan, EPE was requesting that EDGE, The City, and The County approve certain amendments, modifications, and supplements to The Graceland Project, which included the construction of a theater capable of seating 6,200 persons ("The Arena"), additional museum space, as well as additional retail facilities and other related improvements (*See* Graceland's Supplemental Economic Plan).

22.     One of the initial feats that EPE sought to accomplish under the Supplemental Economic Plan was the addition of an 80,000 square foot convention/exhibition facility on the Graceland Campus ("The Convention Center").

23.     Interestingly, as detailed below, although it had no legitimate basis for doing so, The City strenuously opposed EPE's construction of The Convention Center and actively sought to prevent EDGE from considering The Convention Center for approval.  But EDGE, over The City's baseless objection, granted EPE's request for approval of The Convention Center on April 5, 2018.  And EPE currently is in the midst of building the Convention Center, and expects to hold its grand opening in late Spring 2019.

24.     With respect to the remaining aspects of Graceland's Supplement Economic Plan, in order to financially sustain this next phase of The Graceland Project, EPE is seeking to have the percentage of incremental property taxes being captured for use on The Graceland Project increased from fifty percent (50%) to sixty-five (65%) of the excess property taxes over the Base Tax Amount (as defined in The Graceland Economic Plan).

25.     Notably, The City on multiple occasions has advised EPE's representatives that The City approved of Graceland's Supplemental Economic Plan and was supportive of EPE's request to have the percentage of incremental property taxes being captured for use on The Graceland Project increased from fifty percent (50%) to sixty-five (65%) of the excess property taxes over the Base Tax Amount (as defined in The Graceland Economic Plan).  But, as detailed below, The City's recent actions have not been consistent with the representations that The City has made to EPE and the citizen of Memphis and Shelby County regarding Graceland's Supplemental Economic Plan.

26.     Based on a schedule for the required public approvals of Graceland's Supplemental Economic Plan agreed to by EDGE, and the approval of the City Administration and the County Administration, EPE's representative appeared before the Executive Committee of the Memphis City Council on August 22, 2017, and the Economic Development Committee of the Shelby County Commission on September 6, 2017, in compliance with the local requirements of the EDGE TIF Program.

27.     Immediately after EPE's presentation to the Memphis City Council Executive Committee, representatives of Memphis Basketball, LLC ("Memphis Basketball") contacted The City and objected to Graceland's Supplemental Economic Plan and The Arena in particular.[1]

---

[1] Memphis Basketball owns and operates the National Basketball Association franchised team known as the Memphis Grizzlies.

28.     Memphis Basketball's improper efforts notwithstanding, the next step of the approval process took place on September 20, 2017, when the Public Hearing required for EDGE to approve Graceland's Supplemental Economic Plan was held during an EDGE Board meeting. *See* Tenn. Code Ann. § 7-53-312(f).  At this meeting, EPE's representatives presented a revised proposed development in an effort to accommodate Memphis Basketball's objections to the Supplemental Economic Plan and The Arena. The public also was given an opportunity to address Graceland's Supplemental Economic Plan during the Public Hearing.

29.     Despite having representatives at the Public Hearing, Memphis Basketball made no public comment during the Hearing. Nevertheless, the approval of Graceland's Supplemental Economic Plan, which was scheduled to be on the agenda for the EDGE's Board Meeting on September 20, 2017, was pulled as a result of Memphis Basketball's conduct and a request from the City of Memphis Administration.

30.     A special meeting of the EDGE Board subsequently was set for October 10, 2017 for EDGE to consider Graceland's Supplemental Economic Plan. Leading up to that date, EPE unsuccessfully continued to negotiate in good faith to try and reach a reasonable agreement with The City and Memphis Basketball.  Due to what EDGE represented were Memphis Basketball's actions, and in contravention to EDGE's policies, the special meeting of the EDGE Board was cancelled on October 9, 2017.

31.     Notwithstanding its support of the Graceland Supplemental Economic Plan and the fact that its written policies mandate otherwise, EDGE expressed that it would not move forward in the approval process until Memphis Basketball was no longer a threat.

32.     Despite deciding to not go forward with the approval process, EDGE was not agreeing with or adopting Memphis Basketball's position.  Rather, upon information and belief,

EDGE's legal counsel advised the EDGE Board Members that The Arena Use Agreement does not prohibit EDGE from voting to approve Graceland's Supplemental Economic Plan and The Arena.[2]

33.     Concomitantly with EDGE halting the approval process in October 2017, EPE was also notified by the City Administration that it would not consent to Graceland's Supplemental Economic Plan and The Arena until written confirmation was received from Memphis Basketball that The Arena would not trigger a breach by The City of The Arena Use Agreement.

34.     Accordingly, the formal approval process for Graceland's Supplemental Economic Plan and The Arena came to a halt.  Notably, simultaneous with EDGE refusing to consider Graceland's Supplemental Economic Plan, The City suddenly started trying to impose unreasonable requirements on EPE for The City's consent to The Arena.

35.     In order to better understand exactly why EDGE was not moving forward with voting on Graceland's Supplemental Economic Plan in accordance with its policies, EPE's representatives addressed the matter directly with The City, Memphis Basketball and EDGE.

36.     Much to the dismay of EPE, EPE was told that Memphis Basketball had threatened to sue EDGE if EDGE proceeded with approving Graceland's Supplemental Economic Plan.

37.     EPE was baffled by Memphis Basketball's position, as there absolutely is no basis for Memphis Basketball to sue EDGE or The City over The Graceland Project.

---

[2] "The Arena Use Agreement" refers to the Memphis Arena Use and Operating Agreement (as amended from time-to-time) entered into by and among The City, Shelby County, Tennessee and HOOPS, L.P.  In acquiring the Memphis Grizzlies from HOOPS, L.P. ("HOOPS"), Memphis Basketball became the successor-in-interest to HOOPS.  For all matters pertinent hereto, including all legal documents, contracts and other agreements, Memphis Basketball is viewed, considered, and treated as if it was the party that made and executed such documents and agreements at the time and date on which HOOPS executed said documents and agreements.

38.     EDGE, contrary to its policies, halted the approval process. And The City ultimately reneged on its commitments to EPE.

39.     EPE eventually learned that The City and Memphis Basketball, albeit incorrectly, were contending that EPE's construction of The Arena is paramount to The City and The County impermissibly participating in the design, development, construction and financing of a new Competing Facility (as defined in The Second Amendment to The Arena Use Agreement), which is prohibited by the Non-Participation Provision of that Agreement.

40.     But a simple perusal of The Arena Use Agreement shows that there is no legitimate basis for anyone to remotely suggest that The Arena or any phase of The Graceland Project is prohibited by that Agreement.  And (upon information and belief) EDGE's counsel already has conveyed this fact to the EDGE Board.

41.     In fact, The Arena Use Agreement unequivocally and directly authorizes The City and The County to encourage, provide support for, and approve private projects like The Graceland Project.

42.     Nevertheless, because of Memphis Basketball and The City, EDGE continuously refused to consider and vote on EPE's supplemental requests and applications.  Thus, EPE could not proceed on to the City Council and County Commission phase of the approval process.

43.     As EPE improperly was being denied its right to move forward with The Graceland Project, and was (and still is) missing out on the business opportunities that necessarily will flow to it after completion of each phase of The Graceland Project, in November 2017 EPE filed a declaratory judgment action in the Chancery Court of Shelby County requesting that Court to interpret The Arena Use Agreement.

44.     Significantly, because it was unequivocally clear that The Arena is the only aspect of The Graceland Project that Memphis Basketball and The City could contend was remotely impacted by The Arena Use Agreement, EPE proceeded with obtaining the appropriate approvals for the other aspects of The Project simultaneously with the declaratory judgment action.

45.     Particularly, despite The Arena being at a standstill, EPE continued with its requests for EDGE to approve EPE's use of tax increment revenues to pay for the eligible costs associated with EPE's development of the 80,000 square foot Convention Center on the Graceland Campus.

46.     As detailed below, The City was none too pleased with EPE filing the declaratory judgment action or with EPE seeking EDGE's approval of The Convention Center.  But until October 4, 2018, EPE had no appreciation for just how far The City would go to castigate EPE for protecting its rights.

<u>THE NOVEMBER 2017 CHANCERY COURT LAWSUIT</u>

47.     As noted above, on November 15, 2017, EPE filed a Verified Complaint for Declaratory Judgment, Intentional Interference with Business Relationship, and Other Injunctive and Equitable Relief (the "Dec. Action") against The City, Memphis Basketball, and Shelby County, Tennessee.

48.     The City and Memphis Basketball subsequently moved to dismiss the Dec. Action on the grounds that EPE lacked standing to seek a declaration from the Chancery Court because EPE was neither a party to, nor third-party beneficiary of The Arena Use Agreement.

49.     Interestingly, although it was not previously raised or argued in their extensive briefing, The City and Memphis Basketball's argument for dismissal of the Dec. Action evolved into a discussion of whether EPE had failed to exhaust its administrative remedies.

50.     In essence, The City and Memphis Basketball contended that EPE had failed to exhaust its administrative remedies because EDGE had not formally considered and voted on Graceland's Supplemental Economic Plan.

51.     The Chancery Court ultimately concluded that EPE was required to demand that EDGE consider and vote on Graceland's Supplement Economic Plan prior to seeking a declaration from that Court.  Consequently, the Dec. Action was dismissed by the Chancery Court.

## THE EDGE LAWSUIT AND RESOLUTION

52.     Consistent with the Court's mandate that EPE exhaust its administrative remedies by demanding a formal vote on Graceland's Supplemental Economic Plan, on February 16, 2018, EPE sent EDGE a written request for a vote at EDGE's next regularly scheduled board meeting or a special meeting to be set by the EDGE Board.

53.     Despite EPE's request, EDGE refused to actually vote on Graceland's Supplement Economic Plan and The Arena at that meeting.

54.     Importantly, at the same time that the Dec. Action was being litigated, EPE was pursuing The Convention Center application before EDGE.  Because it was clear to EDGE that (i) The Convention Center and The Arena were separate and unrelated facilities; and (ii) The Convention Center did not invoke any provision of The Arena Use Agreement, EDGE placed The Convention Center on its February 21, 2018 meeting agenda for consideration and approval.

55.     But EDGE ultimately refused to consider The Convention Center for approval at that meeting because The City (with no justifiable basis for doing so) showed up and espoused that The Arena Use Agreement prohibiting it from doing so.

56.     Consequently, on March 23, 2018, EPE filed a Verified Complaint for Declaratory Judgment and Other Injunctive and Equitable Relief against EDGE in order to compel a vote on Graceland's Supplemental Economic Plan, The Arena and The Convention Center.

57.     In response to that lawsuit, EDGE placed EPE's Supplemental Economic Plan, The Convention Center and The Arena on the agenda of its April 5, 2018 meeting.

58.     Over The City's vigorous objection, the EDGE Board voted and approved Graceland's Supplemental Economic Plan, The Convention Center and The Arena on April 5, 2018.  The EDGE Board memorialized its approval by way of a written resolution ("the EDGE Resolution").

59.     Significantly, however, EDGE's approval of Graceland's Supplemental Economic Plan and The Arena was conditioned upon and mandated that EPE have this Court interpret The Arena Use Agreement.

60.     With respect to The Convention Center, EDGE's approval of EPE's request resulted in EPE immediately having the right to use tax increment revenues to pay for the eligible costs associated with The Convention Center.

61.     Significantly, although The Convention Center now is under construction, due to The City's obstructionist behavior, construction of The Convention Center was delayed for several months, and the grand opening of The Convention Center had to be push out beyond the originally scheduled date.  Resultantly, EPE has lost, and will continue to lose, various and

12

sundry business opportunities, and has suffered, and will continue to suffer, significant monetary losses.

62.     The City was none too pleased with EDGE approving Graceland's Supplemental Economic Plan, The Convention Center and The Arena.  But prior to October 4, 2018, EPE had no idea just how far The City would go to punish EPE for protecting its rights and moving forward with The Graceland Project.

THE COUNTY COMMISSION RESOLUTION

63.     Having received the necessary approval from EDGE to proceed forward, on June 4, 2018, EPE went before to the Board of County Commissioners of Shelby County, Tennessee ("The County Commission") to obtain its approval of Graceland's Supplemental Economic Plan and The Arena.  Consistent with EDGE's actions and recommendation, The County Commission adopted a resolution approving EPE's request to amend/modify The Graceland TIF such that the percentage of incremental property taxes being captured for use of The Graceland Project may be increased from fifty percent (50%) to sixty-five percent (65%) of the excess property taxes over the Base Tax Amount (as defined in The Graceland Economic Plan) ("The County Resolution").

64.      Significantly, like The EDGE Resolution, The County Resolution also instructed and authorized EPE go into The Chancery Court for Shelby County, Tennessee, and have that Court provide a declaration as to the proper interpretation of the Non-Participation Provision contained in The Arena Use Agreement.

65.     Once again, The City was none too pleased with The County Commission approving Graceland's Supplemental Economic Plan and The Arena.  But before October 4, 2018 EPE was unaware of the extent to which The City would go to penalize EPE for protecting its rights and moving forward with The Graceland Project.

13

<u>THE JUNE 2018 CHANCERY COURT LAWSUIT</u>

66.    Consistent with mandates and instructions contained it The EDGE Resolution and The County Resolution, on June 29, 2018 EPE filed a Verified Complaint for Declaratory Judgment against The City, Memphis Basketball, and Shelby County, Tennessee (the "Resolution Lawsuit").  (A true and correct copy of the June 29, 2018 Verified Complaint for Declaratory Judgment is attached hereto as **Exhibit 1**.)

67.    In the Resolution Lawsuit, which currently is pending and in the infancy stage of litigation, EPE is seeking a declaration as to the proper interpretation of the Non-Participation Provision contained in The Arena Use Agreement.

<u>EPE PROCEEDS WITH THE NON-ARENA ASPECTS OF THE PROJECT</u>

68.    Although the Resolution Lawsuit is pending, EPE decided to continue with its revitalization plans.  EPE made this decision in part because [i] The Arena is the only aspect of The Graceland Project being objected to by Memphis Basketball; [ii] The EDGE Resolution and The County Resolution established the appropriate process for resolving the issues relating to The Arena; [iii] the Resolution Lawsuit will resolve The Arena issues; and [iv] no person or entity has lodged (nor legitimately could lodge) any objections to EPE moving forward with the non-arena aspects of The Graceland Project.  Simply put, EPE proceeded with the non-arena aspects of The Project because it had an unfettered right to do so, and there was nothing prohibiting it from proceeding with that portion of The Project.

69.    Consistently, EPE has [i] invested a significant amount of its own resources into The Project; [ii] engaged the appropriate professionals, including, but not limited to engineers, architects, attorneys, surveyors, designers and consultants, necessary to prepare the requisite

designs, plans, drawings, blueprints, and etcetera required for The Project; [iii], as well as to obtain any zoning, planned development or other approvals required for The Project.

70.     Significantly, the work completed by EPE and the various professionals culminated into EPE submitting its Application for Planned Development Approval (PD No. 18-34) (the "Development Application") to the Memphis and Shelby County Office of Planning and Development (the "OPD") on August 31, 2018.  (A true and correct copy of the Development Application is attached hereto as **Exhibit 2**.)

71.     From that date forward, EPE's representatives were communicating with the OPD, and expected the OPD to approve the Development Application in early October 2018. Indeed, there was no basis for the OPD to reject the Development Application; and based on past practices and experiences, approval was all but certain to occur.

72.     However, much to EPE's consternation, the OPD decided to indefinitely "table" the Development Application.

<u>THE CITY RETALIATES AGAINST EPE</u>

73.     Inexplicably, although there was no need for him to insert himself into the Development Application approval process, The City's Chief Legal Officer, Bruce McMullen (the "City Attorney"), intervened and interfered with the process, and prevented the OPD from approving the Development Application.

74.     More particularly, during the week of October 1, 2018, the City Attorney contacted the OPD and wrongfully coerced the OPD into not considering the Development Application for approval for an indefinite period of time.

75.     Josh Whitehead, the OPD's Planning Director/Administrator, provided EPE written confirmation of this development on October 4, 2018.  On that day, Mr. Whitehead sent counsel for EPE, Hunter Humphreys, Sr., an email stating as follows:

> Hunter:
>
> Earlier this week, the City Attorney requested that PD No. 18-34 be deferred until the pending litigation in Chancery Court is concluded.  I have conferred with my in-house Division attorney and he agrees.
>
> Therefore, PD 18-34 will not be considered by the Land Use Control Board until such time as the pending legislation [sic] is concluded.
>
> Should you have any questions about this matter, please send those questions in writing and I will likely refer them to our attorneys.
>
> Thank you,
>
> **Josh Whitehead, AICP**

(A true and correct copy of the October 4, 2018 email from Mr. Whitehead to Mr. Humphreys is attached hereto as **Exhibit 3**).

76.     As a result of the OPD succumbing to The City's undue and unlawful influence, EPE unlawfully is being prohibited from engaging in any further development activity on The Graceland Campus.

77.     Indeed, because the Development Application was not properly considered and approved – like it should and would have been but for the City Attorney's unlawful interference into the approval process – EPE cannot, *inter alia*, build the airplane hangar that will protect and preserve the historic airplanes formerly owned by Elvis Presley; relocate and update the RV Park currently located on The Graceland Campus; nor can it build the cabins that will enhance The Graceland Campus or complete the addition to The Guest House at Graceland Hotel.

78.     Significantly, none of these particular development projects relate to or otherwise implicate in any way The Arena Use Agreement.  Likewise, there is no legitimate basis whatsoever for prohibiting EPE from proceeding with and completing these projects – which is why The City Attorney went the indefinitely "table" route with the OPD, instead of requesting the OPD to wrongfully deny the Development Application altogether.

79.     What is more, while The City has used The Arena Use Agreement to try and legitimize its wrongful conduct in other circumstances, it absolutely cannot use that document to justify its retaliatory conduct in this instance.  The Arena Use Agreement unequivocally carves out the non-arena aspects from the Non-Participation prohibitions contained therein.  To wit, The Arena Use Agreement specifically states that the Non-Participation provisions "shall not be interpreted to prohibit transactions and activities normally and/or routinely engaged in by the (x) planning, building, permitting and engineering departments of [The City] in the ordinary course of reviewing and/or approving projects submitted by private developers."  (*See* The Arena Use Agreement.)  As such, it is clear that the only basis for The City's conduct was to retaliate against and otherwise "get even with" EPE for exercising its First Amendment rights and protecting itself and its interests.

80.     Nevertheless, despite all of the "good" that EPE has done thus far in Whitehaven and the City of Memphis, and its desire and commitment to doing so much more going forward, The City has taken extraordinary measures to block EPE from completing the development projects, bringing additional jobs to Whitehaven, and otherwise continuing to be the chief catalyst for the revitalization and renewed interest in the Whitehaven Community.

81.     Rather than commend EPE for its activity and dedication to the Whitehaven and Memphis communities, The City (acting through the City Attorney) retaliated against EPE by wrongfully blocking the OPD from considering the Development Application for approval.

82.     The City (acting through the City Attorney) took this unlawful, retaliatory action against EPE because The City was none too pleased with EPE and wanted to punish and otherwise "get even with" EPE for, *inter alia*, [i] disagreeing with The City regarding The Arena Use Agreement; [ii] obtaining The EDGE Resolution and The County Resolution over The City's objections; [iii] suing The City in The Dec. Action and the Resolution Lawsuit; [iv] defending and protecting itself and its rights from and against The City; [v] exercising its right to free speech and to file suit under the First Amendment to The United States Constitution; and [vi] commenting publically regarding these matters.

83.     The City's retaliatory conduct has caused substantial harm to EPE, and EPE is entitled to monetary damages to redress the wrongs caused by The City.

## CAUSES OF ACTION

### COUNT I
### RETALIATION IN VIOLATION OF 42 U.S.C. § 1983

84.     EPE repeats and realleges paragraphs 1 through 83 of this Complaint as though fully set forth herein.

85.     The First Amendment to the United States constitution guarantees, *inter alia*, the right to free speech and the "right of the people . . . to petition the Government for a redress of grievances."  U.S. CONST. amend. I.

86.     Consistently, Article I, Section 17 of the Constitution of the State of Tennessee likewise guarantees the right of access to the courts.  *See* TENN. CONST. art. 1, § 17 ("That all courts shall be open; and every man, for an injury done him in his lands, goods, person or

18

reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay."); *see also Team Design v. Gottlieb*, 104 S.W.3d 512, 525 (Tenn. Ct. App. 2002) ("One of the most fundamental principles upon which our society is based is that all persons have a right to seek judicial redress for injuries or to protect rights and interests recognized elsewhere in the law."), *overruled on other grounds by Tuetken v. Tuetken*, 320 S.W.3d 262 (Tenn. 2010).

87.     EPE's filing of the Dec Action and the Resolution Lawsuit and public comments regarding those lawsuits constituted protected conduct.

88.     The City unlawfully retaliated against EPE as a direct result of EPE exercising its fundamental First Amendment right to file suit against The City and to address its claims publically.

89.     More specifically, the City Attorney, acting in his official capacity and with final decision-making authority on behalf of The City, wrongfully influenced and instructed the OPD to indefinitely "table" the Development Application, thereby unlawfully preventing EPE essentially from conducting any further development of The Graceland Campus.

90.     As direct and proximate result of the City's retaliatory conduct, EPE is now prohibited from investing and spending its own money to develop and complete any aspect of The Graceland Project, including those aspects that are unrelated to The Arena.

91.     The City unlawfully interfered with the Development Application approval process and wrongfully blocked EPE from proceeding with The Graceland Project in order to punish EPE for seeking judicial redress in the two (2) Chancery Court proceedings, and to deter EPE from continuing with The Resolution Lawsuit or otherwise engaging in similar and further conduct designed preserve and protect EPE's rights and interest.

19

92.     The City's actions, which violated both federal law and laws of the State of Tennessee, have caused EPE to suffer substantial monetary losses, including, *inter alia*, financial losses flowing from EPE lacking facilities sufficient to host various events, shows and exhibitions that have been earmarked for The Graceland Campus; having to turn down other such events and exhibitions; not being in a position to bid for and be chosen to host other events, exhibitions and shows; as well as not being able to pursue other business opportunities requiring the construction of additional facilities on The Graceland Campus.

93.     Accordingly, pursuant 42 U.S.C. § 1983, EPE is entitled to an award of compensatory damages against The City to compensate EPE for its actual damages, which include, but are not limited to, EPE's out of pocket expenses and losses, lost profits and impaired revenue.

94.     EPE likewise is entitled to an award of punitive damages against The City.

95.     EPE also is entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

96.     EPE repeats and realleges paragraphs 1 through 95 of this Complaint as though fully set forth herein.

97.     EPE has substantial contractual relationships with various third-parties relating to and flowing from The Graceland Project.

98.     Based upon its communications with EPE, the various applications, disclosures and other submissions that EPE has made in connection with The Graceland Project, and its past dealings with EPE, The City is very well-aware of the contractual relationships between EPE and third-parties underlying this claim.

20

99.     The City also has knowledge of certain of the events and exhibitions that EPE has contracted to host and showcase, such as the Muhammad Ali exhibition, in connection with The Graceland Project. [3]

100.    Armed with this knowledge and information, The City - with specific intent of retaliating against EPE and harming EPE's contractual relationships – intentionally caused the OPD to wrongfully block EPE from proceeding with The Graceland Project.

101.    As a proximate result of The City's intentional and malicious conduct, which constitutes unlawful tortious interference, EPE's contractual relationships have been, interfered with, impeded, and/or destroyed.

102.    Consequently, EPE is entitled to recover money damages from The City, including without limitation, all of its pecuniary and consequential losses caused by The City's intentional, improper interference.

### COUNT III
### INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

103.    EPE repeats and realleges paragraphs 1-102 of this Complaint as though fully set forth herein.

104.    EPE has substantial business relationships with various third-parties relating to and flowing from The Graceland Project.

105.    Based upon its communications with EPE, the various applications, disclosures and other submissions that EPE has made in connection with The Graceland Project, and its past

---

[3] Due to the confidential and proprietary nature of this information, EPE cannot specifically identify in this Complaint all of the pertinent contractual and business relationships that are being interfered with by The City.  But The City knows who they are.  Indeed, because of its prior dealings with EPE, the prerequisites imposed on EPE relating to The Graceland Project and the ongoing state court litigation, The City is aware of which relationships are at issue.

dealings with EPE, The City is very well-aware of the business relationships between EPE and certain third-parties underlying this claim.

106.     The City also has knowledge of certain of the events and exhibitions that EPE has contracted to host and showcase, such as the Muhammad Ali exhibition, in connection with The Graceland Project.

107.     Armed with this knowledge and information, The City - with specific intent of retaliating against EPE and harming EPE's business relationships – intentionally caused the OPD to wrongfully block EPE from proceeding with The Graceland Project.

108.     As a proximate result of The City's intentional and malicious conduct, which constitutes unlawful tortious interference, EPE's business relationships have been, interfered with, impeded, and/or destroyed.

109.     Consequently, EPE is entitled to recover money damages from The City, including without limitation, all of its pecuniary and consequential losses caused by The City's intentional, improper interference.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Elvis Presley Enterprises, Inc., EPPF, LLC and Guesthouse at Graceland, LLC, pray that judgment be entered in their favor and against the Defendant as follows:

1.     That EPE be awarded judgment against Defendant City of Memphis in an amount to be determined by the trier of fact, plus attorneys' fees and all cost incurred in connection with this action;

2.     That punitive damages be assessed against Defendant City of Memphis in favor of EPE based on the bad and unlawful actions of Defendant City of Memphis;

22

3.       That EPE be granted and awarded such other, further, or different relief to which this Court might find EPE to be entitled.

Respectfully submitted this the 16th day of October, 2018.

_s/Clarence A. Wilbon_____
Clarence A. Wilbon (TN Bar No. 023378)
J. Bennett Fox, Jr. (TN Bar No. 026828)
M. Roxana Rudolph (TN Bar No. 034825)
**ADAMS AND REESE LLP**
6075 Poplar Ave, Suite 700
Memphis, TN  38119
Telephone: (901) 524-5324
Facsimile: (901) 524-5414
Clarence.Wilbon@arlaw.com
Ben.Fox@arlaw.com
Roxy.Rudolph@arlaw.com

***Attorneys for Plaintiffs***

## **VERIFICATION**

I, _Jack Soden_, am the _CEO_ of

Elvis Presley Enterprises, Inc., and in that capacity do swear and affirm that the statements

given in its Verified Complaint for Declaratory Judgment, Intentional Interference with

Business Relationship, and Other Injunctive and Equitable Relief are true and correct to the

best of my information and belief.

_____

Title: _CEO_

SUBSCRIBED AND SWORN TO before me by _____ Jack Soden _____ as

_____ CEO _____ of _Elvis Presley Enterprises_,

on the _15th_ day of _____ October _____, 2018, to certify my hand and seal

of office.

_____

Notary Public – State of _TN,_

My Commission Expires:

_2/5/19_



23