# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| ELVIS PRESLEY ENTERPRISES, INC., EPPF, LLC, and GUESTHOUSE AT GRACELAND, LLC, <br><br>    Plaintiffs, <br><br>v. <br><br>CITY OF MEMPHIS, TENNESSEE, <br><br>    Defendant. | No. 2:18-cv-2718 |

## ORDER

Before the Court is Defendant City of Memphis's (the "City's") November 6, 2018 motion to dismiss. (ECF No. 8.) Plaintiffs Elvis Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland, LLC (collectively "EPE")[1] responded on December 4, 2018. (ECF No. 21.) The City replied on December 18, 2018. (ECF No. 23.) Plaintiffs filed supplemental briefing on May 30, 2019. (ECF No. 42.) The City filed supplemental briefing on June 4, 2019. (ECF No. 45.)

EPE brings claims against the City for retaliation under 42 U.S.C. § 1983, intentional interference with contractual relationships under Tennessee law, and intentional interference with business relationships under Tennessee law. (Id. 18-22.)

---

[1] The parties use the singular "EPE" to refer to Plaintiffs.

The City filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, the City's motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.  **Background**

EPE owns and operates Graceland, the former home of Elvis Presley and a current tourist attraction in Memphis, Tennessee.[2] (ECF No. 1 at 2.)[3]

In 2014, EPE developed the Graceland Project, a planned redevelopment of Graceland that included a new hotel and improvements to existing facilities. (Id. at 2-3.) To help fund the Graceland Project, EPE submitted EPE's Economic Impact Plan for Graceland Economic Development Area (the "Plan") to the City, Shelby County, Tennessee (the "County"), and the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby ("EDGE"). (Id. at 3.) The Plan included a request for tax increment financing, which would earmark a certain amount of property taxes to support the Graceland Project. (Id.) EDGE, the City, and the County approved the Plan in late 2014. (Id.) The new hotel was built. (Id. at 4.) The facility improvements were completed. (Id.)

---

[2] Unless otherwise stated, the following facts are taken from the complaint.
[3] Unless otherwise stated, all record citations are to the PageID number.

In 2017, EPE sought to expand the Graceland Project. (Id. at 5.) EPE submitted to EDGE the Supplement to Economic Impact Plan for Graceland Economic Growth Area (the "Supplemental Plan"). (Id.) The Supplemental Plan requested approval, among other things, of an arena capable of seating 6,200 people (the "Arena"). (Id.)

While EDGE considered the Supplemental Plan, Memphis Basketball, LLC ("Memphis Basketball") contacted the City. (Id. at 6.) Memphis Basketball owns and operates the National Basketball Association franchise the Memphis Grizzlies. (Id.) The Memphis Grizzlies play their home games at FedExForum, a multipurpose arena located in downtown Memphis, Tennessee.[4] Memphis Basketball contended that the City's approval of the Arena would violate a contract between Memphis Basketball and the City, prohibiting the City from providing public financing for competing entertainment facilities. (Id. at 9.) Memphis Basketball threatened to sue EDGE if EDGE approved the Supplemental Plan. (Id. at 8.)

EDGE told EPE it would not move forward with the approval process for the Supplemental Plan until Memphis Basketball dropped its litigation threat. (Id. at 7.) About the same time, the City

---

[4] The Court takes judicial notice of this fact. See History, FedExForum, https://www.fedexforum.com/about-our-house (last visited July 8, 2019).

3

told EPE that the City would not consent to the Supplemental Plan, particularly the Arena, until Memphis Basketball gave the City written confirmation that approval of the Arena would not breach the City's contract with Memphis Basketball. (Id. at 8.) The approval process for the Supplemental Plan came to a halt. (Id.)

EPE responded by filing a declaratory judgment action in Tennessee Chancery Court. (Id. at 9.) EPE asked the court to interpret the contract between Memphis Basketball and the City. (Id.) EPE contended that the contract did not prohibit the City from approving the Arena. (Id.) The Chancery Court dismissed the case, concluding that EPE had to demand that EDGE consider and vote on the Supplemental Plan before EPE could seek a declaratory judgment. (Id. at 10.)

In February 2018, after the Chancery Court's decision, EPE asked EDGE to vote on the Supplemental Plan at its next meeting. (Id. at 11.) EDGE did not do so. (Id.) In March 2018, EPE filed a new action in Tennessee Chancery Court, seeking to force EDGE to vote. (Id. at 12.) EDGE approved the Supplemental Plan about a month later. (Id.) EDGE conditioned its approval on a court order declaring that approval of the Arena would not breach the contract between the City and Memphis Basketball. (Id.)

After securing EDGE's approval, EPE sought the County's. (Id. at 13.) The County approved the request in the Supplemental Plan

4

for increased tax increment financing to support the expanded Graceland Project. (Id.) Addressing the Arena, the County told EPE to get a court declaration on the proper interpretation of the contract between the City and Memphis Basketball. (Id.)

EPE followed EDGE and the County's instructions. (Id. at 14.) In late June 2018, EPE filed a declaratory judgment action in Tennessee Chancery Court against the City, Memphis Basketball, and the County to determine whether approval of the Arena would violate the contract between the City and Memphis Basketball. (Id.)

While that case was pending, EPE sought to move forward with parts of the expanded Graceland Project unrelated to the Arena. (Id.) EPE submitted its Application for Planned Development Approval (the "Development Application") to the Memphis and Shelby County Office of Planning and Development (the "OPD") in August 2018. (Id. at 15.) Approval of the Development Application would have allowed EPE, among other things, to build a new airplane hangar for planes formerly owned by Elvis Presley, build new cabins, and update a recreational vehicle park. (Id. at 16.) EPE was confident the OPD would approve the Development Application. (Id. at 15.)

The OPD neither approved nor denied the Development Application. (Id.) Instead, it decided to table consideration of

the Application indefinitely, until the Chancery Court litigation over the Arena was complete.  (Id. at 16.)  That decision followed instructions from the Memphis City Attorney.  (Id. at 19.)  In an email, the OPD planning director told EPE that:

> Earlier this week, the City Attorney requested that [the Development Application] be deferred until the pending litigation in Chancery Court is concluded.  I have conferred with my in-house Division attorney and he agrees.  Therefore, [the Development Application] will not be considered . . . until such time as the pending legislation [sic] is concluded.

(Id. at 16.)  The Development Application did not seek approval of the Arena at issue in the Chancery Court case.[5]  (Id. at 14-17.)

Because of the OPD's deferral, EPE is prohibited from moving forward with the Development Application projects.  (Id. at 16.) EPE has lost numerous business opportunities -- such as hosting various shows, events, and exhibitions -- causing EPE to suffer substantial monetary loss.  (Id. at 20.)

EPE filed its complaint in this case on October 16, 2018. EPE alleges that the City, through the city attorney, blocked the OPD from considering the Development Application.  (Id. at 18.) EPE alleges that the City did so for two reasons.  (Id. at 18-19.) The first is punitive.  The City wanted to punish EPE for disagreeing with the City about the contract with Memphis

---

[5] The City contends that the Development Application contradicts this allegation and that the Court need not accept the allegation as true.  For the reasons discussed in Part IV.A, the Court accepts the allegation as true.

Basketball, obtaining EDGE and the County's conditional approvals of the Supplemental Plan, suing the City twice in Chancery Court, and commenting publicly about these matters. (Id. at 18.) The second reason is coercive. The City wanted to deter EPE from maintaining its latest suit against the City and from pursuing similar conduct designed to protect EPE's rights and interests. (Id. at 19.)

## II.  Jurisdiction

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." EPE asserts a right to relief against the City under § 1983. That claim arises under the laws of the United States.

The Court has supplemental jurisdiction over EPE's Tennessee-law claims. See 28 U.S.C. § 1367(a). Those claims derive from a "common nucleus of operative fact" with EPE's federal claim against the City. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016).

## III.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can

be granted." A Rule 12(b)(6) motion permits the defendant "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Campbell v. Nationstar Mortg., 611 F. App'x 288, 291 (6th Cir. 2015) (quotation omitted). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Kolley v. Adult Protective Servs., 725 F.3d 581, 587 (6th Cir. 2013).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. If a court, using its "judicial experience and common sense," decides that the claim is not plausible, the claim must be dismissed. Id. at 679.

## IV. Analysis

The City contends that this case should be dismissed because EPE's claims are not ripe and, alternatively, because EPE has

failed to state a claim.  The City also contends that it is entitled to attorney's fees.

A preliminary issue is whether the Court must accept as true EPE's allegation that the Development Application does not seek approval of the Arena at issue in the pending Chancery Court litigation.

## A.  Whether the Development Application Contradicts Allegations in the Complaint

In its complaint, EPE asserts that the Development Application pertains only to the non-Arena portions of the Graceland Project.  The City contends that is not true.  According to the City, the Development Application does in fact seek approval of the disputed Arena.

EPE has attached the Development Application as an exhibit to its complaint.  The Court may therefore consider the Development Application in ruling on the City's motion to dismiss without converting the motion to one for summary judgment.  See Stein v. HHGREGG, Inc., 873 F.3d 523, 528 (6th Cir. 2017).  At the motion to dismiss stage, a court must generally accept all well-pled allegations of the complaint as true.  An exhibit that contradicts those allegations, however, creates an exception to that rule. See Cates v. Crystal Clear Techs., LLC, 874 F.3d 530, 536 (6th Cir. 2017).

9

The City contends that several parts of the Development Application contradict EPE's allegation that the Application does not seek approval of the Arena: (1) a statement that "new improvements in Area E will . . . create additional entertainment facilities," (ECF No. 1-5 at 262); (2) an illustration that refers to a "Multipurpose/Sound Stage Facility" and "Live Event Center," (id. at 271); (3) a reference to an "Indoor Arena/Entertainment Venue" in Area E, (id. at 272); and (4) the inclusion of an "indoor entertainment venue" among the planned developments, (id. at 308).

Those parts of the Development Application cast doubt on EPE's allegation that the Application does not seek approval of the Arena. Doubt, however, is not enough. See Mackley v. Sullivan & Liapakis, P.C., No. 98 CIV. 4860 SWK, 1999 WL 287362, at *3 n.2 (S.D.N.Y. May 7, 1999) ("Because the documents incorporated by reference and attached to the complaint do not contradict, but merely cast doubt on some of [plaintiff's] allegations, the Court must accept those allegations as true."). The exhibit must contradict the allegation to a certainty. See Jones v. Select Portfolio Servicing, Inc., 672 F. App'x 526, 531 (6th Cir. 2016) (exhibit must "plainly" contradict the allegation); Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013) (exhibit must "incontrovertibly" contradict the allegation). There is insufficient context to conclude to a certainty that the

Development Application's statements about an indoor arena and entertainment venue refer to the Arena at issue in Chancery Court. Further factual development is needed.[6] For purposes of the motion to dismiss, EPE's allegation that the Development Application does not seek approval of the Arena is accepted as true.

## B. Ripeness

The City asserts that all of EPE's claims are unripe. The City's ripeness argument, however, addresses only EPE's retaliation claim. The Court will limit its ripeness analysis to that claim. See McPherson v. Kelly, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n, 59 F.3d 284, 293-94 (1st Cir. 1995)).

To support its ripeness argument, the City relies on the "finality" requirement, a ripeness doctrine particular to land use cases against the government. See Miles Christi Religious Order

---

[6] The Court will not at this time consider the exhibits that the parties submitted with their supplemental briefing. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) ("Generally speaking, a trial court has discretion to address evidence outside the complaint when ruling on a motion to dismiss."). A full record, rather than a preliminary and piecemeal one, will better permit a decision about whether the Development Application seeks approval of the Arena. See SMDI Co. v. Dynamic Details, Inc., Ariz., 2006 WL 2355387, at *1 (D. Ariz. Aug. 14, 2006) ("[U]nless the external materials are incontrovertible, we must give the parties a fair opportunity to conduct discovery to flesh out their case.").

v. Twp. of Northville, 629 F.3d 533, 537 (6th Cir. 2010). Under the finality requirement, certain claims that arise from land disputes are not ripe until the relevant regulatory body has issued a final decision on the land at issue. See id. Because there has not been a final decision on the Development Application, the City argues that EPE's retaliation claim is unripe. EPE contends that the finality requirement does not apply because its claim is based on the city attorney's retaliation, not the OPD's decision to table consideration of the Development Application indefinitely.

The finality requirement first appeared in the context of takings claims under the Fifth and Fourteenth Amendments. See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985), overruled on other grounds by Knick v. Twp. of Scott, 139 S. Ct. 2162 (2019). The requirement has since been applied to other constitutional and statutory challenges to local land-use requirements. See Miles Christi Religious Order, 629 F.3d at 536 (Free Exercise Clause); Grace Cmty. Church v. Lennox Twp., 544 F.3d 609, 615 (6th Cir. 2008) (Religious Land Use and Institutionalized Persons Act); Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1362 (6th Cir. 1992) (Equal Protection Clause).

Two Sixth Circuit cases have extended the finality requirement to First Amendment retaliation claims. See Dubuc

12

v. Twp. of Green Oak, 406 F. App'x 983, 990-91 (6th Cir. 2011);
Insomnia, Inc. v. City of Memphis, 278 F. App'x 609, 616 (6th Cir.
2008).

In Insomnia, a local regulatory board denied plaintiffs'
application to subdivide two plots of land and directed them to
resubmit their application as a planned development rather than a
subdivision. Id. at 611. Instead of complying with the board's
direction, plaintiffs sued in federal court. Id. Plaintiffs were
in the adult entertainment business, and they claimed that the
board had denied their application because of hostility toward
their industry in violation of the First Amendment's prohibition
against retaliation. Id. at 611, 616.

To determine whether plaintiffs' retaliation claim had to
satisfy the finality requirement, the court adopted the two-prong
test from Murphy v. New Milford Zoning Commission, 402 F.3d 342
(2d Cir. 2005). Insomnia, 278 F. App'x at 615-16. Plaintiffs
failed the first prong, which asked "whether the [plaintiffs]
experienced an immediate injury as a result of [the defendant's]
actions . . . ." Id. at 615 (quoting Murphy, 402 F.3d at 351).
There was no injury, according to the court, because plaintiffs
could follow the board's instruction and resubmit their
application as a planned development. Id. at 615. If they did,
there was "a chance that their proposal [would be] approved" and,

13

if approved, plaintiffs would be "entitled to proceed with the subdivision of their land and even conduct adult entertainment on the premises . . . ." Id. The finality requirement, therefore, applied to the plaintiffs' retaliation claim.[7] Id. at 616. Because plaintiffs had not received a final decision, their retaliation claim was dismissed as unripe. Id.

In Dubuc, plaintiffs sued the township and several township employees for procedural due process violations arising from an unfavorable zoning decision. 406 F. App'x at 984. Plaintiffs alleged that, after they had filed suit, defendants refused to process several permit applications in retaliation. Id. a 985. Plaintiffs alleged that defendants had refused to process their applications on the advice of the city attorney and that defendants refused to process a third party's permit application because of plaintiffs' suit. Id.

The court held that plaintiffs' retaliation claim was not ripe because the plaintiffs had "failed to allege any facts to support a finding that their permit applications were ever actually denied."[8] Id. at 990-91. The court did not rely on that conclusion

---

[7] Plaintiffs also failed the second prong, which asked "whether requiring the [plaintiffs] to pursue additional administrative remedies would further define their alleged injuries." Id. at 615. The court concluded that, if "[p]laintiffs' renewed plan as a proposed development is rejected, this outcome will further define the contours of [p]laintiffs' claim of First Amendment Retaliation." Id. at 615-16.

[8] The court cited Insomnia for the proposition that the finality requirement applies to First Amendment retaliation claims. Dubuc, 406 F. App'x at 990. The court did not, however, conduct the two-prong Murphy analysis to determine

14

alone. What was important was that "it [was] not apparent that [plaintiffs'] issues could not be resolved with further administrative action . . . ." Id. at 991. The court placed special emphasis on evidence that defendants had, in fact, issued at least one permit and that defendants were in communication with plaintiffs about plaintiffs' other permit applications. Id. On that basis, the court concluded that plaintiffs' "permit applications [had] not yet reached a final decision, and their retaliation claim [was thus] not ripe for review." Id.

The facts alleged in this case are markedly different from the facts in Insomnia and Dubuc. There, plaintiffs could have availed themselves of further administrative process when they filed their suits. Neither case presented what EPE alleges here: a local regulatory body deciding not to decide a land-use application indefinitely, perhaps for years. Accepting EPE's allegations as true and drawing all reasonable inferences in its favor, EPE has no way to appeal the OPD's decision to table consideration of the Development Application indefinitely. EPE may have to wait for years before the Chancery Court litigation concludes.[9] The finality requirement does not bar EPE's

_____

whether the finality requirement was appropriate under the circumstances. The court assumed that the finality requirement applied.

[9] The City contends that EPE might be able to gain approval by resubmitting the Development Application with references to the Arena removed. The Court, however, accepts as true EPE's allegation that the Development Application does

15

retaliation claim in these circumstances. <u>Insomnia</u> and <u>Dubuc</u> present two ways to approach the finality question, either of which EPE satisfies. Under the <u>Insomnia</u> framework, which asks at the outset whether the finality requirement should apply, the finality requirement does not apply because EPE's inability to appeal the OPD's deferral results in an immediate injury.[10] Under the <u>Dubuc</u> framework, which assumes that the finality requirement applies to retaliation claims, OPD's unappealable deferral is sufficiently final to satisfy the requirement. EPE's retaliation claim is ripe.[11]

## C.  Section 1983

Section 1983 provides a cause of action to those who suffer the deprivation of a federal right by someone acting under color of state law. See <u>Bright v. Gallia Cty.</u>, 753 F.3d 639, 660 (6th

---

not seek approval of the Arena. The City's suggestion, therefore, offers EPE no recourse.

[10] EPE also satisfies the second <u>Murphy</u> prong because it cannot "pursue additional administrative remedies." <u>Insomnia</u>, 278 F. App'x at 615.

[11] EPE argues that the finality requirement should not apply because its "claim became ripe as soon as the City Attorney took adverse, retaliatory action against EPE . . . ." (ECF No. 21 at 453.) The Sixth Circuit has not accepted this argument. See <u>Dubuc</u>, 406 F. App'x at 990-91 (ripeness of First Amendment claim tied to finality of underlying land-use decision); <u>Miles Christi Religious Order</u>, 629 F.3d at 540 (same); <u>Insomnia</u>, 278 F. App'x at 615-16 (same). But see <u>Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach</u>, 727 F.3d 1349, 1357 (11th Cir. 2013) ("[W]here, as here, the plaintiff alleges that the mere act of designating his or her property historic was motivated by discriminatory animus, [the finality requirement] is inappropriate because the injury is complete upon the municipality's initial act . . . ."); <u>Miles Christi Religious Order</u>, 629 F.3d at 548 (Batchelder, J., dissenting) (finality requirement should not apply to immediate Free Exercise Clause harms that subsequent administrative action could not remedy); <u>Dougherty v. Town of North Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 90 (2d Cir. 2002) (finality requirement did not apply to First Amendment retaliation claim because that claim was "based on an immediate injury").

Cir. 2014). To survive a motion to dismiss when the right alleged to have been violated is the First Amendment's prohibition against retaliation, a § 1983 plaintiff must adequately plead that: (1) it engaged in conduct protected by the First Amendment; (2) defendant took an adverse action against it that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. See Holzemer v. City of Memphis, 621 F.3d 512, 520 (6th Cir. 2010). When a § 1983 plaintiff seeks to impose liability on a municipality, the plaintiff must also plead that a municipal policy or custom caused the plaintiff's injury. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Bible Believers v. Wayne Cty., 805 F.3d 228, 260 (6th Cir. 2015) (en banc).

The City does not dispute that EPE has adequately alleged that the city attorney acted under color of state law or that EPE engaged in conduct protected by the First Amendment. The City contends that EPE has not adequately pled the second and third elements of its retaliation claim and that EPE's allegations are insufficient to impose liability on the City.

**1. Retaliation**

EPE has adequately pled the second and third elements of its retaliation claim.

As to the second element, the city attorney's instruction that the OPD indefinitely table consideration of the Development Application and the OPD's agreement to do so could deter a person of ordinary firmness from maintaining a suit. "[T]he harassment necessary to rise to a level sufficient to deter an individual is not extreme." Holzemer, 621 F.3d at 524. An indefinitely delayed decision on the Development Application resulting in substantial monetary losses is enough. See Kennedy v. Bonevelle, 413 F. App'x 836, 840 (6th Cir. 2011) ("[O]nly de minimis violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.") It does not matter, as the City argues, that EPE has not alleged that it has been actually deterred from maintaining the Chancery Court action or from making public comments. The standard is objective, not subjective. See Holzemer, 621 F.3d at 525.

As to the third element, the City relies on its contention that the Development Application in fact seeks approval of the Arena, so that the city attorney's instruction to the OPD is reasonable. The City argues that, if the alleged retaliatory acts were reasonable, the claim should be dismissed. There are two problems with this argument. First, as previously discussed, the Court accepts as true EPE's allegation that the Development Application does not seek approval of the Arena. Second, even if

the Court were to assume that the Development Application sought approval of the Arena, dismissal based on the motivation element would not be warranted.  A plaintiff need only show that the adverse action was taken "at least in part because of the exercise of the protected conduct."  Siggers-El v. Barlow, 412 F.3d 693, 699 (6th Cir. 2005).  EPE has adequately alleged that the city attorney instructed the OPD to delay consideration of the Development Application at least in part to deter EPE from engaging in protected First Amendment conduct.  EPE alleges that the City sought to punish EPE for its protected conduct and deter EPE from engaging in further protected activity.

EPE has adequately pled the elements of First Amendment retaliation.

### 2.  Municipal Liability

Section 1983 does not impose vicarious liability on municipalities for their employees' actions.  See Monell, 436 U.S. at 694.  Municipal liability attaches only if a municipal policy or custom caused the plaintiff's constitutional harm.  See id.  A plaintiff can draw from several sources to show the existence of a policy or custom.  EPE relies on one source: the single unconstitutional act or decision of an authorized decisionmaker who has "final authority to establish municipal policy with respect to the action ordered."  Pembaur v. City of Cincinnati, 475 U.S.

469, 481 (1986). Whether an official has final policymaking authority is governed by state law. See id. at 483. State law "includes 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

Citing the Memphis City Charter, EPE contends that it has sufficiently pled a liability-conferring policy because the city attorney "is the chief legal officer of the entire municipality," "his decisions are not subject to review or appeal," and, "[a]s a matter of law, decisions made by the City Attorney subject the City to liability under § 1983." (ECF No. 21 at 462-63.) EPE argues that the city attorney is a policymaker with final authority because he acted in his capacity as city attorney when he instructed the OPD to defer consideration of the Development Application.

The complaint does not allege that the city attorney had the authority, pursuant to positive law or local custom, to direct the OPD's land-use application decisions, and that authority cannot reasonably be inferred. The complaint alleges that the city attorney used an underhanded litigation tactic in attempting to secure a favorable outcome for the City in litigation in which the

City was a defendant. EPE alleges that the city attorney instructed the OPD to defer consideration of the unobjectionable Development Application to inflict financial harm on EPE and to coerce EPE to drop its Chancery Court action. The City's liability depends on whether the litigation tactic was a "municipal policy" that the city attorney had "final authority to establish." Pembaur, 475 U.S. at 481.[12] EPE directs the Court to the Memphis City Charter.

The Memphis City Charter provides that, "[i]t shall be the duty of the City Attorney . . . to prosecute and defend . . . all suits brought by or against the City . . . ." Memphis City Charter, Part I, Art. XXVIII, § 193. This grant of authority raises two questions: whether defending the city from suit can constitute making municipal policy; and, if it can, whether all actions the city attorney takes in defending the City from suit qualify as municipal policy, or whether some actions -- specifically the alleged litigation tactic at issue in this case -- do not.

---

[12] It does not matter that the OPD might not have had to abide by the city attorney's instruction. See Bible Believers, 805 F.3d at 260 (holding that a municipal attorney's legal advice, which the recipient was free to disregard, amounted to municipal policy that the attorney had final authority to establish); see also McGlone v. Metro. Gov't of Nashville, 749 F. App'x 402, 410 (6th Cir. 2018) ("[T]his case presents an easier call [on municipal liability] as Lt. Corman had more direct authority with respect to the action ordered than did the Wayne County counsel [in Bible Believers] whose duties were admittedly advisory.").

<u>Hilton v. Mish</u>, 720 F. App'x 260 (6th Cir. 2018), suggests that the answer to the first question is yes, a city attorney's actions under his or her litigation authority can amount to municipal policy. In <u>Hilton</u>, the Grand Rapids city attorney sent a disparaging email about the plaintiffs to a third party. <u>Id.</u> at 263. Included in the email was reference to a suit the plaintiffs had filed against Grand Rapids.[13] <u>Id.</u> After learning of the email, the plaintiffs sued Grand Rapids under § 1983 for First Amendment retaliation. <u>Id.</u> The plaintiffs contended that municipal liability was appropriate because the city attorney had ultimate authority to represent Grand Rapids in litigation and her reference to the pending case amounted to municipal policy. <u>Id.</u> at 266. The court disagreed, but not because the authority to litigate cannot confer policymaking power. There was no municipal liability because, "[a]t most, the City's policy giving [the city attorney] the authority to ligate cases on its behalf allowed [the city attorney] to respond to criticism of litigation strategy of a pending case," but "the policy did not sanction or order [the city attorney] to defame [the plaintiffs] to third parties . . . ." <u>Id.</u> This analysis implies that, if a city attorney's response to

---

[13] The relevant remarks were: "[Plaintiff] dares to sue the City of Grand Rapids blaming the [Grand Rapids Police Department] for the fact that her daughter ran away from home to become a crack and heroin whore. Currently pending litigation. Case No. 1:13-CV-00727 . . . . Apparently, [plaintiff] believes that the government is the cause of her family's woes." <u>Hilton</u>, 720 F. App'x at 263.

criticism of litigation strategy causes a plaintiff constitutional harm, the city can be liable under § 1983.  Although dicta, and although at least one court has come to the opposite conclusion, see Webb v. Town of Saint Joseph, 925 F.3d 209, 216 (5th Cir. 2019) (holding that the authority to represent a city in court cannot alone grant a city attorney final policymaking power), Hilton suggests that a city attorney's litigation-related actions can be municipal policy.

That suggestion is supported by other cases where executive action qualified as municipal policy.  In Monistere v. City of Memphis, 115 F. App'x 845 (6th Cir. 2004), municipal liability attached when a lead investigator ordered the unlawful strip-search of city employees.  Id. at 852-53.  In Arendale v. City of Memphis, 519 F.3d 587 (6th Cir. 2008), municipal liability attached when a police chief suspended a police officer.  Id. at 602.  When considering whether an action qualifies as a municipal policy, there is no meaningful distinction between investigating someone, suspending someone, and litigating against someone.  All are exercises of executive authority that can impose liability on a municipality, so long as those actions are taken or ordered by someone with final authority over the area.  See Arendale, 519 F.3d at 602; Monistere, 115 F. App'x at 852-53.

The second question is whether the city attorney's authority to "defend" the City encompasses attempting to coerce EPE to drop its Chancery Court case by instructing the OPD to defer consideration of the Development Application. "There are substantial line-drawing problems in determining when execution of a government's policy or custom can be said to inflict constitutional injury such that government as an entity is responsible under § 1983." Monell, 436 U.S. at 713 (Powell, J., concurring) (internal quotation marks omitted). This case presents one such problem. What the city attorney is alleged to have done could be understood as "defending" the City from suit. Drawing all reasonable inferences in EPE's favor, his purpose was to secure a favorable litigation outcome for the City. Alternatively, the city attorney's allegedly underhanded action could be understood as so far outside the city charter's contemplated grant of authority that the action cannot be something "the municipality has officially sanctioned or ordered." Pembaur, 475 U.S. at 480.

Municipal liability is appropriate on these allegations. "Monell is a case about responsibility." Id. at 478. When a local official is given final policymaking responsibility over an area, the municipality is liable for the consequences of that official's policies. Id. at 483. Litigation strategy is the city attorney's

responsibility. Although the city attorney's action was outside the conventional bounds of legal representation, it was, drawing all reasonable inferences in EPE's favor, an attempt to secure a beneficial litigation outcome for the City. The city charter charges the city attorney with doing just that. In allegedly instructing the OPD to defer consideration of the Development Application, the city attorney made "a deliberate choice to follow a course of action . . . from various alternatives . . . ." Pembaur, 475 U.S. at 483. The City has not cited any authority that suggests that the city attorney's litigation-related decisions are not "final[,] . . . unreviewable," and "not constrained by the official policies of superior officials." Feliciano, 988 F.2d at 655.

The allegedly underhanded and unorthodox nature of the city attorney's action does not remove it from the scope of municipal policy. This is not a case where an official with final policymaking power acted outside the scope of his authority because he abused that authority for personal gain. The City stood to benefit from the city attorney's action. See Roe v. City of Waterbury, 542 F.3d 31, 41 (2d Cir. 2008); Wooten v. Logan, 92 F. App'x 143, 147 (6th Cir. 2004). Nor is this a case where a final policymaker's exercise of authority conflicts with established

policy.  See Auriemma v. City of Chicago, 957 F.2d 397, 399 (7th Cir. 1992).  The City cites no such policy.

The complaint's allegations that the City is liable under § 1983 are enough to survive a motion to dismiss.  EPE is entitled to explore this issue in discovery.  Drawing all reasonable inferences in EPE's favor, the city attorney exercised his final policymaking authority over litigation strategy when he attempted to get EPE to drop its suit against the City by instructing the OPD to defer consideration of the Development Application.  EPE has sufficiently pled municipal liability.[14]

The City's motion to dismiss EPE's § 1983 claim is DENIED.

## D.  Tortious Interference

The City contends that EPE's interference with contractual relationships claim is barred by the Tennessee Government Tort Liability Act ("GTLA"), Tenn. Code. Ann. §§ 29-20-101, et seq. The City's argument is well-taken.

The GTLA governs the liability of the City for torts committed by its agents.  See Noyes v. City of Memphis, No. 11-2775-STA, 2012 WL 3060100, at *3 (W.D. Tenn. July 25, 2012).  The City is

---

[14] The City contends that it is not liable because the city attorney does not have final authority over the decision to approve the Development Application. That does not matter.  The source of EPE's harm is the OPD's decision, allegedly instructed by the city attorney, to defer consideration of the Development Application indefinitely.  Drawing all reasonable inferences in EPE's favor, EPE cannot appeal that decision.  The city attorney's role in that decision, understood as a litigation tactic, is a municipal policy sufficient to impose § 1983 liability on the City.

immune from suit for the torts specified in the GTLA. Id.
"[I]nterference with contract rights" is one specified tort. Tenn.
Code. Ann. § 29-20-205(2). Thus, the City is immune from EPE's
interference with contractual relationships claim. The City's
motion to dismiss EPE's interference with contractual
relationships claim is GRANTED.

The City contends that EPE has failed to state a claim for
intentional interference with business relationships. That
argument is also well-taken.

The first element of intentional interference with business
relationships is an "existing business relationship with specific
third parties or a prospective relationship with an identifiable
class of third persons . . . ." Trau-Med of Am., Inc. v. Allstate
Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002). EPE's complaint names
no specific third parties or class of third persons. (See ECF No.
1 at 21 (referring to relationships "with various third-parties
relating to and flowing from the Graceland Project").) EPE's
intentional interference with business relationships claim fails.
See TIG Ins. Co. and Fairmont Specialty Grp. v. Titan Underwriting
Managers, LLC, 2008 WL 4853081, at *4 (Tenn. Ct. App. Nov. 7, 2008)
("Titan failed to sufficiently state a claim against TIG for
intentional interference with its business relationships. Titan
failed to establish it had existing relationships with

the specific clients with whom it claims TIG interfered."). The City's motion to dismiss EPE's interference with business relationships claim is GRANTED.

### E.    Attorney's Fees

Forty-two U.S.C. § 1988 provides that, in cases brought under § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Because the City's motion to dismiss is denied as to EPE's § 1983 claim, the City is not a "prevailing party." The City's request for an award of attorney's fees is DENIED.

### V.    Conclusion

For the foregoing reasons, the City's motion to dismiss is GRANTED IN PART and DENIED IN PART.


So ordered this 13th day of August, 2019.


/s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE