```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```
_____

ELVIS PRESLEY ENTERPRISES, INC.,)
EPPF, LLC and GUESTHOUSE AT    )
GRACELAND, LLC,                )
                               )
     Plaintiffs,               )
                               )    No. 2:18-cv-02718-SHM-dkv
v.                             )
                               )
                               )
CITY OF MEMPHIS, TENNESSEE,    )
                               )
     Defendant.                )
_____

           ORDER DENYING PLAINTIFFS' MOTION TO COMPEL RESPONSES
                    TO REQUESTS FOR PRODUCTION
_____

     Before the court is the motion, filed on August 26, 2019, by the plaintiffs, Elvis Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland, LLC (collectively "EPE"), to compel the defendant, City of Memphis, Tennessee (the "City"), to produce certain documents. (Pl.'s Mot., ECF No. 67.)  The City filed a response in opposition on September 9, 2019, (Def.'s Resp., ECF No. 74), and EPE filed a reply on September 24, 2019.  (Pl.'s Reply, ECF No. 78.)  The motion has been referred to the United States Magistrate Judge for determination.  (Order of Ref., ECF No. 68.)  Pursuant to the order of reference, hearings were held on October 7 and 9, 2019.   Jonathan Lakey and Carl Jacobson, attorneys for the City, and Clarence Wilbon and Ben Fox, attorneys

for EPE were present.  On October 16, 2019, the court granted the City's unopposed motion for a protective order prospectively defining the scope of the City's limited waiver of the attorney-client privilege.  (ECF No. 86.)  Attached to the City's motion was a corresponding amended privilege log detailing the communications subject to the limited waiver.  (ECF No. 83-1.)

EPE's motion to compel production of documents as to the following communications listed on the City's Amended Privilege Log is granted as modified by the City's unopposed protective order defining the scope of the City's limited waiver of the attorney-client privilege:

(1)  the e-mail communication dated October 11, 2018 from Josh Whitehead to Bruce McMullen (Bates No. EPE FED 10000);

(2)  the e-mail communication dated October 5, 2018 from Josh Whitehead to Bruce McMullen (Bates No. EPE FED 10001-02)(10001 partially redacted and 10002 produced without redactions);

(3)  the e-mail communication dated October 2, 2018 from Bruce McMullen to Josh Whitehead with copy to Josh Lakey (Bates No. EPE FED 10003-04);

(4)  the e-mail communication dated October 2, 2018 from Josh Whitehead to Bruce McMullen with copies to Jon Lakey, and John Zeanah (Bates No. EPE FED 10003);

(5)  the e-mail communication dated October 2, 2018 from Bruce McMullen to Josh Whitehead with copies to Jon Lakey, and John Zeanah (Bates No. EPE FED 10003);

(6)  the e-mail communication dated October 4, 2018 from Josh Whitehead to Bruce McMullen with copies to Jon Lakey, and John Zeanah (Bates No. EPE FED 10003);

(7) the e-mail communication dated October 2, 2018 from Bruce McMullen to Josh Whitehead with copy to Jon Lakey (Bates No. EPE FED 10005-06);

(8) the e-mail communication dated October 2, 2018 from Josh Whitehead to Robert Rolwing, with copy to John Zeanah, and Jeffrey Penzes (Bates No. EPE FED 10005);

(9) the e-mail communication dated January 17, 2019 from Robert Rowling to John Zeanah and Josh Whitehead (Bates No. EPE FED 10007-08); and

(10) the e-mail communication dated January 17, 2019 from Josh Whitehead to Robert Rowling, John Zeanah, and Jeffrey Penzes (Bates No. EPE FED 10007).

The City submitted the following four documents to the court for *in camera* inspection:

(1) the e-mail communication dated October 11, 2018 from Ursula Madden to Bruce McMullen and Jennifer Sink (Bates No. EPE FED 10000) "regarding EPE's PD Application and pending State lawsuit";

(2) the e-mail communication dated October 11, 2018 from Jennifer Sink to Bruce McMullen and Ursula Madden (Bates No. EPE FED 10000) "follow-up to client's email to attorney regarding EPE's PD Application and pending State lawsuit";

(3) the e-mail communication dated January 17, 2019 from Marlinee Iverson to Robert Rowling and "other county attorneys"[1] (Bates No. EPE FED 10008-09); and

(4) the partial redactions in the e-mail communication dated October 5, 2018 from Josh Whitehead to Bruce McMullen (Bates No. EPE FED 10001 partially redacted).

After *in camera* review of the communications, EPE's motion to compel production of the following documents is denied and the

---

[1] The City provided the identity and positions of the "other county attorneys" by letter to EPE on September 9, 2019. (*See* ECF No. 83-1, at 3.)

City's renewed objection that the above communications contain information subject to the attorney-client privilege and/or work product doctrine is sustained for the reasons set forth below.[2]

## I. DISCUSSION

### A. Legal Standards

The attorney-client privilege protects confidential communications between a lawyer and a client on matters relating to legal representation. *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). In federal question cases issues of privilege are determined by application of federal common law. *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006); Fed. R. Evid. 501. Under federal common law principles, the attorney-client privilege applies: (1) "[w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998)

The Sixth Circuit has recognized that a government entity may assert the attorney-client privilege in the context of a civil

---

[2] The City also asserted that the e-mail communication dated January 17, 2019 from Marlinee Iverson to Robert Rowling and "other county attorneys" is protected as attorney work product.

litigation.³  *See Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005)("Review of both our sister circuits' precedents and outside authority confirm that a government entity can assert attorney-client privilege in the civil context."); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621 (7th Cir. 2010)("The public interest is best served when agencies of the government have access to the confidential advice of counsel regarding the legal consequences of their past and present activities and how to conform their future operations to the requirements of the law.")(citing *Ross*, 423 F.3d at 603); *Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010)("Corporate clients may assert the attorney-client privilege, . . . and the Sixth Circuit has extended the privilege to protect governmental clients in civil matters.")(internal citation omitted).

The work-product doctrine "is distinct from and broader than the attorney client privilege."  *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 304 (6th Cir. 2002).

---

³ It is sometimes unclear which agents of the municipality are "clients" for the purposes of the attorney-client privilege. *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1244 (D. Wyo. 2016)(citing *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998)). In *Reed*, the Sixth Circuit recognized that "communications between city council members were not protected by the attorney-client privilege when council members participate in a meeting with a city attorney but act as third parties without interests." *Id.* "Ultimately, the [*Reed*] court found communications made during the meeting were not protected by the attorney-client privilege as the two additional council members 'played no role' in the subject matter of the meeting." *Id.* at 1245.

5

Work-product extends beyond confidential communications between the attorney and client to "any document prepared in anticipation of litigation by or for the attorney." *Id.* The doctrine is codified in Federal Rule of Civil Procedure 26(b)(3)(A) which states in pertinent part that a party may not ordinarily discover — save for a showing of "undue hardship" — "documents or tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "Fact" work product — which reflects information received by the lawyer — receives less protection than "opinion" work product. *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010). "Opinion" work product reflects the lawyer's mental impressions, opinions, conclusions, judgments, or legal theories. *Id.*

B. <u>Analysis</u>

First, as to the e-mail communication in (1) above, Ursula Madden — the City's Chief Communications Officer — is a City official and is thus a "client" within the meaning of the attorney-client privilege. *See Ross*, 423 F.3d at 605 ("[I]n conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client."). Mr. McMullen is the City's Chief Legal Officer and Ms. Sink is the City's Deputy Director of Law Division Services. The court finds that Ms. Madden was not disinterested in the subject of the

6

communication made between her, Mr. McMullen and Ms. Sink. *Reed*, 134 F.3d at 358. After *in camera* review, the court is convinced that Ms. Madden's October 11, 2018 communication sought legal advice from a professional legal adviser (Mr. McMullen) in confidence. *Ross*, 423 F.3d at 600. Accordingly, the court finds that the information contained in the e-mail communication in (1) above is subject to the attorney-client privilege.

Next, as to the e-mail communication in (2) above, Ms. Sink and Mr. McMullen are both "attorneys" communicating to a "client" (Ms. Madden) within the meaning of the attorney-client privilege. *See Ross*, 423 F.3d at 605 ("[I]n conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client."). After *in camera* review, the court is convinced that Ms. Sink's October 11, 2018 "follow up" e-mail communication was made in her capacity as a professional legal adviser. *Ross*, 423 F.3d at 600. Accordingly, the court finds that the information contained in the e-mail communication in (2) above is subject to the attorney-client privilege.

Next, as to the email communication in (3) above, Marlinee Iverson is a Shelby County Attorney whose email contained an update on the status of pending legal proceedings involving the County. The email's recipients were all employees of the Shelby County Attorney's Office. All the recipients of Ms. Iverson's email are county attorneys, paralegals, or administrative assistants. *See*

7

*Hilton-Rorar v. State & Fed. Commc'ns Inc.*, 2010 WL 1486916, at *4 (N.D. Ohio Apr. 13, 2010)("The attorney-client privilege protects communications between or among a lawyer and client and their representatives or agents. . . . Law clerks, secretaries, paralegals, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, among other aides, including consulting experts may qualify as an attorney's representative."). Self-initiated attorney communications intended to keep the client posted on legal developments are still subject to the attorney-client privilege. *In re CV Therapeutics, Inc. Securities Litigation*, 2006 WL 1699536, *4 (N.D. Cal. Jul. 16, 2006). Accordingly, the court finds that the information contained in the communication in (3) above is subject to the attorney-client privilege.

The court also finds that the communication in (3) above is protected by the work-product doctrine. After *in camera* review, the court is convinced that Ms. Iverson's email contains work product made in anticipation of litigation concerning pending legal proceedings involving the County. *Reitz*, 680 F. Supp. 2d at 892.

Finally, as to the partial redactions in (4) above, OPD is a joint city-county agency[4] and thus Mr. Whitehead, as OPD Planning Director, is a "client" of Mr. McMullen's within the meaning of the attorney-client privilege. *See Ross*, 423 F.3d at 605 ("[I]n conversations between municipal officials and the municipality's counsel, the municipality, not any individual officers, is the client."). The court finds that Mr. Whitehead was not disinterested in the subject of the communication made between him and Mr. McMullen. *Reed*, 134 F.3d at 358. After *in camera* review of the partially redacted communication at issue in (4), the court is convinced that Mr. Whitehead, as a client, sought legal advice from a professional legal adviser (Mr. McMullen) in confidence. *Ross*, 423 F.3d at 600. Accordingly, the information contained in the partially redacted communication at issue in (4) is subject to the attorney-client privilege.

## II. CONCLUSION

For the foregoing reasons, the court finds that the four remaining communications contain information subject to the attorney-client privilege and/or work product doctrine. After *in camera* review of these communications, EPE's motion to compel

---

[4] *See Office of Planning and Development*, Shelby Cty. Tenn., https://shelbycountytn.gov/924/Zoning-Subdivision (last visited Nov. 18, 2019)("This *joint department* of the City of Memphis and Shelby County processes and analyzes applications for zoning changes, subdivision of property and land development actions.")(emphasis added).

9

production of the four remaining documents is denied and the City's renewed objection that these communications contain information subject to the attorney-client privilege and/or work product doctrine is sustained.

    IT IS SO ORDERED this 18th day of November, 2019.

                            s/Diane K. Vescovo
                            DIANE K. VESCOVO
                            CHIEF UNITED STATES MAGISTRATE JUDGE