IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ELVIS PRESLEY ENTERPRISES, INC., ) <br> EPPF, LLC, and GUESTHOUSE AT ) <br> GRACELAND, LLC, ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF MEMPHIS, TENNESSEE ) <br> ) <br>    Defendant. ) <br> ) | No.  2:18-cv-02718 |

ORDER

Before the Court are five motions appealing discovery orders
issued by the Magistrate Judge.  The first is Plaintiffs Elvis
Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland,
LLC's (collectively, "EPE") Appeal of Order Granting in Part and
Denying in Part Plaintiffs' Motion to Compel ("Appeal of March 6,
2020 Order"), filed on March 20, 2020.  (ECF No. 226.)  Defendant
City of Memphis, Tennessee (the "City") responded on April 3, 2020.
(ECF No. 241.)  EPE replied on April 16, 2020.  (ECF No. 252.)

The second is EPE's Appeal of Order Granting in Part and
Denying in Part Plaintiffs' Motion to Compel the City to Produce
Documents Improperly Withheld Based on Joint Defense Agreement
Privilege ("Appeal of March 12, 2020 Order"), filed on March 26,

2020.  (ECF No. 233.)  The City responded on April 9, 2020.  (ECF No. 249.)  EPE replied on April 22, 2020.  (ECF No. 261.)

The third is EPE's Appeal of Order Granting the Defendant's Motion for Protective Order to Quash Deposition of Jim Strickland ("Appeal of March 20, 2020 Order"), filed on April 3, 2020.  (ECF No. 242.)  The City responded on April 17, 2020.  (ECF No. 257.) EPE replied on April 29, 2020.  (ECF No. 268.)

The fourth is EPE's Appeal of Order Granting Defendant's Motion to Quash Subpoenas Issued to Kemp Conrad and Commercial Advisors and Order Denying Plaintiffs' Motion to Compel Production of Documents ("Appeal of April 6, 2020 Order"), filed on April 20, 2020.  (ECF No. 260.)  The City responded on May 4, 2020.  (ECF No. 273.)  EPE replied on May 21, 2020. (ECF No. 291.)

The fifth is EPE's Appeal of Order Denying Plaintiffs' Renewed Motion to Compel Responses to Plaintiffs' Renewed Motion to Compel Responses to Requests for Production ("Appeal of April 24, 2020 Order"), filed on May 8, 2020.  (ECF No. 276.)  The City responded on May 22, 2020.  (ECF No. 295.)  EPE replied on May 28, 2020. (ECF No. 296.)

For the following reasons, EPE's objections are OVERRULED. The Magistrate Judge's orders are AFFIRMED.

## I.   Background

In the Magistrate Judge's March 20, 2020 order, she accurately and aptly summarizes the substantive background of this case.  (See

2

ECF No. 225 at 2-6; see also ECF No. 63 at 2-7.)  The Court need not repeat it here.  Relevant for our purposes, however, is the procedural and substantive background of the orders at issue.

### A. March 6, 2020 Order

In July 2019, EPE served the City with requests for production ("RFPs").  (See ECF No. 177-1.)  In September 2019, the City responded to EPE's RFPs, objecting to many of them.  (See ECF No. 137-1.)  Between October 2019 and January 2020, EPE and the City exchanged letters between counsel and met in person to reach an agreement to limit the City's obligations.  (See ECF No. 176 at 5-6.)  On January 17, 2020, and January 30, 2020, in response to EPE's RFPs and pursuant to an agreement between the parties, the City produced multiple documents.  (See id. at 6-7.)  On January 31, 2020, EPE filed a motion to compel the City to produce more documents in response to its RFPs.  (ECF No. 137.)  Eleven of the RFPs were at issue.  (See ECF No. 137 at 7-18.)  The Court referred that motion to the Magistrate Judge.  (ECF No. 154.)  After briefing and a hearing on the motion, the Magistrate Judge denied in part, and granted in part, EPE's motion to compel.  (See ECF No. 215 at 3-4.)  The Magistrate Judge found that the parties had entered into a stipulation agreement that limited the scope of discovery under Federal Rule of Civil Procedure 29(b), and that that agreement, the Electronic Search Protocol Agreement ("ESP

Agreement"),[1] (ECF No. 176-7), dictated some, but not all, of the City's obligations to respond to the RFPs and to produce documents. (See ECF No. 215 at 2-5.)   The Magistrate Judge ruled on the contested RFPs under the terms of the ESP Agreement.   (See id.) On March 20, 2020, EPE timely appealed.   (ECF No. 226.)

**B. March 12, 2020 Order**

When the City produced documents to EPE on January 17, 2020, and January 30, 2020, it created a privilege log and withheld documents on the basis of a "joint defense agreement" privilege.[2] (See ECF No. 136-1; No. 176 at 6-7.)   On January 31, 2020, EPE filed a motion to compel the City to produce the documents withheld on the basis of that privilege.   (ECF No. 136 at 3-6.)   EPE argued that the City did not meet its burden of establishing the validity of a joint defense agreement.   (Id. at 2.)   Alternatively, assuming a valid agreement existed, EPE argued that the City improperly withheld documents dated prior to the commencement of the joint defense agreement.   (Id.)   In their reply, EPE asked that the Court hold an evidentiary hearing to determine whether the City had

---

[1] The ESP Agreement is a January 6, 2020 document that, by its terms, "describes the electronic search parameters agreed upon by the parties." (ECF No. 176-7 at 4.)   The ESP Agreement provides that, using a defined set of search terms, the City will search the files of defined individuals for information responsive to specific RFPs.   (Id. at 4-7.)

[2] The documents the City withheld are communications between the City and parties who are co-defendants in EPE's Shelby County Chancery Court suits.

wrongfully withheld documents. (<u>See</u> ECF No. 188 at 5.) The motion was referred to the Magistrate Judge. (ECF No. 154.)

On March 2, 2020, the Magistrate Judge held a hearing on the motion. (ECF No. 208.) At that hearing, the Magistrate Judge found the descriptions of the log deficient and ordered the City to file a revised privilege log. (<u>See</u> ECF No. 217 at 2.) On March 10, 2020, the City filed a revised privilege log with updated descriptions. (ECF No. 216.)

On March 12, 2020, the Magistrate Judge granted in part, and denied in part, EPE's motion to compel, and denied EPE's request for an evidentiary hearing. (ECF No. 217.) The Magistrate Judge found that the City had entered into a valid oral privilege agreement with its co-defendants in EPE's Shelby County Chancery Court suits and had properly withheld documents under that privilege. (<u>See</u> <u>id.</u> at 7-8.) The Magistrate Judge found that the privilege did not apply to documents dated before the date the agreement was formed. (<u>See</u> <u>id.</u> at 8-9.) The Magistrate Judge ordered the City to produce the documents it had withheld before the oral agreement. (<u>See</u> <u>id.</u> at 9.) On review of the revised privilege log, the Magistrate Judge found that the communications were properly described, classified, and withheld. (<u>See</u> <u>id.</u>) On March 26, 2020, EPE timely appealed. (ECF No. 233.)

**C. March 20, 2020 Order**

In December 2018, the City filed a motion to quash the depositions of Memphis Mayor Jim Strickland and City Chief Operating Officer Doug McGowen. (ECF No. 24.) After oral arguments had been heard on the motion, EPE withdrew the notice to depose Mayor Strickland and McGowen and the motion was denied as moot. (See ECF No. 35; see also ECF No. 33.) On February 7, 2020, after EPE had renewed the notice to take the depositions of Mayor Strickland and McGowen, the City renewed its motion to quash. (ECF No. 176.) That motion was referred to the Magistrate Judge. (Admin. Order 2020-10, Feb. 28, 2020.)

On March 6, 2020, a hearing was held on the motion. (ECF No. 212.) At the hearing, the City agreed to withdraw its motion to quash as to McGowen, and the Magistrate Judge subsequently denied that part of the motion as moot. (See ECF No. 225 at 2.) On March 20, 2020, the Magistrate Judge granted the motion to quash as to Mayor Strickland. (ECF No. 225.) The Magistrate Judge found that EPE had not shown "extraordinary circumstances" to depose Mayor Strickland, a "high-ranking government official" who is generally protected from being deposed, (id. at 13-15 (citing Murray v. U.S. Dep't of Treasury, 2010 WL 1980850, at *2 (E.D. Mich. May 18, 2010)); under Rule 26(c)(1), there was "good cause" to quash the deposition to protect Mayor Strickland from "annoyance, embarrassment, oppression, or undue burden," (see id. at 16); and

under Rule 26(b)(2)(C)(i), other sources could provide the information EPE sought in a "more convenient, less burdensome, or less expensive," way, (id. at 16-17).  On April 3, 2020, EPE timely appealed.  (ECF No. 242.)

### D. April 6, 2020 Order

On February 21, 2020, the City filed a motion to quash, or in the alternative, for a protective order prohibiting discovery, of subpoenas duces tecum issued to nonparties Kemp Conrad and Commercial Advisors, LLC.  (ECF No. 185.)  EPE responded to the motion and filed a contemporaneous motion to compel production of the relevant documents.  (See ECF No. 213.)  The Court referred the motions to the Magistrate Judge.  (ECF No. 240.)  On April 6, 2020, the Magistrate Judge granted the City's motion to quash and for a protective order and denied EPE's motion to compel.  (ECF No. 245.)  The Magistrate Judge found that, under Rule 26(b)(2)(C)(ii), there was "good cause" to issue a protective order because the deadline for written discovery had passed and EPE could have obtained the documents it sought through written requests pursuant to the ESP Agreement.  (Id. at 12-13.)  On April 20, 2020, EPE timely appealed.  (ECF No. 260.)

### E. April 24, 2020 Order

In the Magistrate Judge's March 6, 2020 Order, the Magistrate Judge instructed the City to review former City Attorney Bruce McMullen's cellular telephone for text messages responsive to

EPE's RFP No. 12.   (ECF No. 215 ¶ 5.)   The City followed that directive and produced twelve pages of text messages between McMullen and other parties.   (ECF No. 265 at 5.)   On further review, the City produced an additional responsive text message that it had not previously identified.  (See id. at 5-6.)  On April 1, 2020, EPE filed a renewed motion to compel, arguing that the City should be compelled to produce further documents and should be sanctioned for its failure to produce text messages.[3]  (ECF No. 238.)   On April 17, 2020, EPE filed a supplement to its renewed motion to compel, asking that the Court order the City to submit McMullen's cellular telephone to a third-party forensic analyst. (ECF No. 256.)

On April 24, 2020, the Magistrate Judge denied EPE's renewed motion to compel, denied the request for sanctions, and denied as moot EPE's request to have McMullen's telephone searched by a forensic analyst.  (ECF No. 265 at 12.)   The Magistrate Judge concluded that the City had met and gone "beyond" its discovery obligations under the ESP Agreement, and that sanctions were not warranted because EPE was not prejudiced by the City's failure to produce the relevant text messages.  (See id. at 10-12.)

---

[3] After receiving discovery from a third party, EPE obtained text messages from McMullen that the City had not produced.  EPE argued that the City had improperly withheld, destroyed, and failed to fully search McMullen's cellular telephone for certain responsive text messages.  (See ECF No. 238 at 2-5.)

The Magistrate Judge has considered and ruled on more than thirty separate discovery motions. (See ECF No. 273-1.) She has conducted seven hearings and issued more than twenty discovery-related orders. The Magistrate Judge is intimately familiar with the parties, the nature of this litigation, and the discovery issues in this case.

## II.  Jurisdiction

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." EPE asserts a right to relief against the City under 42 U.S.C. § 1983. That claim arises under the laws of the United States.

## III. Standard of Review

When a magistrate judge issues a non-dispositive order, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id.; see also 28 U.S.C. § 636(b)(1)(A); LR 72.1(g)(1).

The "clearly erroneous" standard applies to factual findings made by the magistrate judge. Gandee v. Glaser, 785 F. Supp. 684, 686 (S.D. Ohio 1992), aff'd, 19 F.3d 1432 (6th Cir. 1994) (citation

omitted).   The "contrary to law" standard applies to her legal conclusions.   Turner v. City of Memphis, No. 17-cv-2447, 2019 WL 430934, at *2 (W.D. Tenn. Feb. 4, 2019).   Rule 72(a) requires "considerable deference to the determinations of magistrates." In re Search Warrants Issued Aug. 29, 1994, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (citing 7 Moore's Federal Practice ¶ 72.03). Deference "is especially appropriate where the magistrate judge has managed a . . . case from the outset and developed a thorough knowledge of the proceedings."   Hyland v. Homeservices of Am., Inc., No. 3:05-cv-612, 2012 WL 1680109, at *3 (W.D. Ky. May 14, 2012) (internal citation, quotation marks, and alterations omitted).

A magistrate judge's factual findings are clearly erroneous when, on review of the entire record, "although there is evidence to support [the findings], the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed."   United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also In re Burke, 863 F.3d 521, 528 (6th Cir. 2017) (citation omitted); United States v. Hurst, 228 F.3d 751, 756 (6th Cir. 2000).   "[T]he test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one."   Heights Cmty. Cong. v. Hilltop Realty, Inc., 774 F.2d 135, 140-41 (6th Cir. 1985) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985)).

"When examining legal conclusions under the 'contrary to law' standard, the Court may overturn 'any conclusions of law which contradict or ignore applicable [binding] precepts of law, as found in the Constitution, statutes, or case precedent.'" Doe v. Aramark Educ. Res., Inc., 206 F.R.D. 459, 461 (M.D. Tenn. 2002) (quoting Gandee, 785 F. Supp. at 686); see also 32 Am. Jur. 2d Fed. Cts. § 140 (2018) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."). "Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate's conclusion . . . ." Carmona v. Wright, 233 F.R.D. 270, 276 (N.D.N.Y. 2006) (citing Tompkins v. R.J. Reynolds Tobacco Co., 92 F. Supp. 2d 70, 79 (N.D.N.Y. 2000)) If so, the magistrate judge did not act contrary to law. See id. "That reasonable minds may differ on the wisdom of a legal conclusion does not mean it is clearly erroneous or contrary to law." Id. (citing Moss v. Enlarged City Sch. Dist. of City of Amsterdam, 166 F. Supp. 2d 668, 670 (N.D.N.Y. 2001)).

**IV.  Analysis**

**A. Appeal of March 6, 2020 Order**

In her March 6, 2020 order, the Magistrate Judge ruled on multiple RFPs.  (ECF No. 215 at 3-4.)  EPE does not specify which RFP decisions it challenges or how the Magistrate Judge clearly erred or ruled contrary to law.  The Court construes EPE's first

appeal as an argument that the Magistrate Judge erred in finding that: (1) the parties had a meeting of the minds in entering into the ESP Agreement; and (2) the City need not search all of McMullen's files or emails. (See generally ECF Nos. 226, 252.)

Parties are allowed to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). That does not allow fishing expeditions, and a "court retains discretion to determine that a discovery request is too broad and oppressive." Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007). Rule 29(b) permits parties to stipulate, without court approval, to "procedures governing or limiting discovery," so long as those procedures do not alter the discovery timeline. See, e.g., Kutzback v. LMS Intellibound, LLC, No. 213-cv-02767, 2020 WL 1317345, at *4 (W.D. Tenn. Mar. 17, 2020); United Parcel Serv. Co. v. DNJ Logistic Grp., Inc., No. 3:16-cv-00609, 2018 WL 3199475, at *12 (W.D. Ky. Apr. 16, 2018), objections overruled, No. 3:16-cv-00609, 2018 WL 3244103 (W.D. Ky. July 3, 2018). The purpose of these stipulations is to "eliminate the cost, effort and expense involved in court intervention in discovery through motion practice." Widevine Techs., Inc. v. Verimatrix, Inc., No. 2-07-cv-321, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009) (citing Lee v. Cent. Gulf Towing, L.L.C., 2004 WL 2988478, *2 (E.D. La. 2004)). If a stipulation agreement is properly formed, courts

must enforce the agreement "according to [its] terms." In re XPO Logistics, Inc., No. 15 MISC. 205, 2017 WL 6343689, at *7 (S.D.N.Y. Dec. 11, 2017) (citations omitted); see also Widevine Techs., 2009 WL 4884397, at *2.  "There would be little point in Rule 29(b) authorizing parties to stipulate to discovery matters if those stipulations could not be enforced." In re DFI Proceeds, Inc., 441 B.R. 914, 917 (Bankr. N.D. Ind. 2011).

State principles of contract law apply in determining whether stipulation agreements under Rule 29(b) are properly formed. See, e.g., Widevine Techs., Inc., 2009 WL 4884397, at *2.  Under Tennessee law,[4] a contract may be express or implied, written or oral. Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 22 (6th Cir. 2003) (citing Johnson v. Central Nat'l Ins. Co., 356 S.W.2d 277, 281 (Tenn. 1962)).  "In order for an enforceable contract to exist, there must be a 'meeting of the minds between the parties with respect to the essential terms of the agreement.'" Id. (citing Simonton v. Huff, 60 S.W.3d 820, 826 (Tenn. Ct. App. 2000)); see also Faber v. Ciox Health, LLC, 331 F. Supp. 3d 767, 782 (W.D. Tenn. 2018), aff'd, 944 F.3d 593 (6th Cir. 2019) (citations omitted).  "The meeting of the minds . . . is to be determined . . . not alone from the words used, but also the

---

[4] The Court assumes Tennessee law governs the agreement at issue because the relevant agreement appears to have been formed and executed in Tennessee.  The parties do not specify any other state or indicate any intent for another state's law to apply.

situation, acts, and the conduct of the parties, and the attendant circumstances." Frix v. Integrity Med. Sys., Inc., No. 1:16-cv-02559, 2017 WL 4171987, at *6 (W.D. Tenn. Sept. 20, 2017) (citation and internal alterations omitted); see also Gurley v. King, 183 S.W.3d 30, 43 (Tenn. Ct. App. 2005) (quoting 17 Am. Jur. 2d Contracts § 1 (1964)). It is an objective inquiry that looks at "whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that the parties agreed to be bound by the terms of the written contract." Broadnax v. Quince Nursing & Rehab. Ctr., LLC, No. W200802130COAR3CV, 2009 WL 2425959, at *3 (Tenn. Ct. App. Aug. 10, 2009) (alteration omitted) (citing Moody Realty Co., Inc. v. Huestis, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007)). "[A]n agreement may be enforced as a contract even though incomplete or indefinite in the expression of some terms, if it is established that the parties intended to be bound by the agreement, particularly where one or another of the parties has rendered part or full performance." Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 633 (6th Cir. 2018).

## 1. Meeting of the Minds

EPE argues that the Magistrate Judge's finding that the parties agreed to a Rule 29(b) stipulation agreement -- the ESP Agreement -- was clearly erroneous. (See ECF No. 226 at 5-8.) EPE argues that there was no meeting of the minds. (See id.) Whether the parties had a meeting of the minds is one of fact.

14

<u>Frix</u>, 2017 WL 4171987, at *6 (citing <u>Wofford v. M. J. Edwards &</u>
<u>Sons Funeral Home, Inc.</u>, 490 S.W.3d 800, 807 (Tenn. Ct. App.
2015)).   This Court's inquiry is not focused on whether it would
find that the parties' minds had met.   The inquiry is whether the
Magistrate Judge's determination that there was a meeting of the
minds was reasonable and supported by evidence, regardless of
whether this Court would have reached the same conclusion.   <u>See</u>
<u>Heights Cmty. Cong.</u>, 774 F.2d at 140-41.

EPE argues that the parties did not have a meeting of the
minds about the preclusive scope of the ESP Agreement.   EPE argues
that its intent on communicating and entering into the ESP
Agreement was never to limit "the entirety of the City's
obligations as to the search, review and production of documents
in response to EPE's discovery requests."[5]   (ECF No. 226 at 2.)
EPE cites language in its initial letter to the City's counsel
discussing negotiations about electronic search parameters,
specifically, "EPE is not limiting its request or suggesting that
these are the only persons with pertinent records/documents.   EPE
further requests that the City exercise due diligence in performing
the searches within its documents and databases, both electronic

---

[5] EPE appears to interpret the Magistrate Judge's order -- and the ESP
Agreement -- as absolving the City of the responsibility to comply with
<u>all</u> of the City's discovery obligations. (<u>See</u> ECF No. 226 at 5-8.)  That
is not what the ESP Agreement provides and is contrary to the Magistrate
Judge's order.  The Magistrate Judge ordered further physical and other
discovery.  (<u>See</u> ECF No. 215 at 2-4.)

and hard file." (ECF No. 252 at 2-3 (citing ECF No. 176-4 at 2).)

The City responded by letter:

> EPE appears to suggest that the City . . . agree[s] to search
> parameters but also remain[s] responsible for a broader
> search of all pertinent records. So that there is no
> misunderstanding in this regard, the City stands by the
> City['s] RFP Responses, including all objections set forth
> therein. . . . It is the City's position that this electronic
> search will meet all of its obligations for providing
> documents responsive to the Subject RFPs. . . . It appears to
> me that we are close to an agreement with regard to how the
> City will proceed with regard to its electronic search. Of
> course, any agreement reached will be premised on the
> understanding that the agreement will define the agreed upon
> parameters for the City's electronic search obligations.

(ECF No. 176-5 at 2 ¶ 1, 5.)  EPE did not address this point in

its next letter to the City. (See ECF No. 176-6.)  In the City's

final letter, it said:

> EPE again appears to suggest that the City [will] conduct
> this electronic search but also remain responsible for some
> type of broader, manual search. So that there is no
> misunderstanding in this regard, the City stands by its
> responses to Plaintiffs' request for production, including
> all objections set forth therein. It is the City's position
> that this electronic search will meet all of its obligations
> for providing documents responsive to the Subject RFPs. . . .

(ECF No. 176-7 at 3.)

Addressing the ESP Agreement, the Magistrate Judge opined:

> Based on the written and oral arguments of counsel and the
> relevant correspondence between the parties, the court finds
> that the parties had a meeting of the minds and reached a
> final agreement as of January 6, 2020 regarding an electronic
> search protocol as set forth in the document entitled
> Electronic Search Parameters . . . .

(ECF No. 215 at 2.)  Addressing its preclusive scope, the

Magistrate Judge found that the ESP Agreement limited the City's

obligation to conduct an electronic search of its records, but not a manual search of physical files for hard copies of documents. (See id.)  The Magistrate Judge made her finding after reviewing the briefs, multiple documents and communications between the parties, and conducting a three-hour hearing. (See ECF Nos. 137, 176, 190, 208.)

The Magistrate Judge did not clearly err in concluding that the ESP Agreement limited the City's obligation to conduct an electronic search of its database.  Although the preclusionary scope of the ESP Agreement was contested, in bargaining about the parameters of the electronic search terms and the inclusion of specific individuals, the Magistrate Judge found that EPE intended to be bound by the terms of the ESP Agreement governing electronic search obligations. (See ECF No. 215 at 2.)  There is sufficient evidence in the record to support her finding.  The letters between counsel, (see ECF Nos. 176-2, 176-4, 176-5, 176-6, 176-7, 176-8, 176-9), in which both parties proposed, modified, and agreed to specific parameters and search terms, are reasonable bases for the Magistrate Judge to conclude that the parties had a meeting of the minds in entering into the ESP Agreement.  The City initially proposed an invitation to treat. (See ECF No. 176-2.)  EPE accepted that invitation and proposed some terms (offer). (See ECF No. 176-4.)  The City responded by agreeing to some of the terms and proposing others (counter-offer). (See ECF No. 176-5.)  EPE

accepted some terms of the City's counter-offer, rejected others, and proposed additional terms (counter-offer #2). (See ECF No. 176-6.)  The City accepted EPE's counter-offer and memorialized the terms in the ESP Agreement (acceptance). (See ECF Nos. 176-7, 176-8.)  In its January 21, 2020 Motion to Compel, EPE represented that the parties had reached an agreement governing electronically stored information.  (See ECF No. 137 at 1.)  That is sufficient to establish that there was a meeting of the minds between the parties in entering into the ESP Agreement.  See Pittman, 901 F.3d at 633.

### 2. Files of Bruce McMullen

EPE contests the Magistrate Judge's finding that the ESP Agreement does not require the City to search all of McMullen's electronic files and emails.  (See ECF No. 226 at 5-6.)  The gravamen of EPE's retaliation claim is that McMullen retaliated against EPE by asking the Memphis and Shelby County Office of Planning and Development (the "OPD") to table EPE's development application.  (See id. at 5.)  In its initial letter about electronic search parameters, the City asked EPE which specific City officials and representatives' databases EPE wanted to be fully searched.  (See ECF No. 176-2 at 1-2.)  EPE responded with a list of officials.  (See ECF No. 176-4 at 1-2.)  McMullen was not on that list.  EPE said the list was not a limitation on its requests or on people who might have responsive information.  (See

ECF No. 176-4 at 2.)  When the City responded, repeating the list of individuals, (ECF No. 176-5 at 2 ¶ 4(a)), EPE confirmed that it agreed "to the list of 'City Representatives' whose electronic communications will be searched." (ECF No. 176-6 at 1.)  McMullen was not on the list of agreed-on City officials whose databases were to be fully searched.[6]  (See ECF No. 176-7 at 4.)  The terms of the ESP Agreement are clear and must be enforced.  In re XPO Logistics, Inc., 2017 WL 6343689, at *7.  The Magistrate Judge's finding is supported by the record.

EPE's objections are OVERRULED.  The Magistrate Judge's March 6, 2020 Order is AFFIRMED.

**B. Appeal of March 12, 2020 Order**

In the Magistrate Judge's March 12, 2020 Order, she decided that the City had entered into a valid common interest arrangement with third parties in a related suit and had properly withheld documents based on that privilege. (See ECF No. 217 at 5-8.)  EPE appeals those decisions.  (See ECF No. 233 at 11-13, 15-17.)

In cases arising under the Constitution, as here, issues of privilege are determined by the application of federal common law. See Reg'l Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 712 (6th Cir. 2006); Fed. R. Evid. 501.  "As a general rule, the

---

[6] The parties agreed to search for any responsive emails between McMullen and the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby ("EDGE"), but did not agree to search McMullen's emails generally.  (See ECF No. 176-7 at 6.)

'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002) (quoting In re Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996)). A common law exception to that waiver has been termed the "common interest privilege." See Reed v. Baxter, 134 F.3d 351, 357 (6th Cir. 1998). "The common interest privilege is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." Broessel v. Triad Guar. Ins. Corp., 238 F.R.D. 215, 219 (W.D. Ky. 2006) (citing Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, American Bar Association Section of Litigation at 196 (4th ed. 2001)); see also John B. v. Goetz, 879 F. Supp. 2d 787, 897–98 (M.D. Tenn. 2010) (citations omitted).

The common interest privilege may be claimed in three instances: (1) when a single attorney represents multiple clients (i.e., joint client privilege); (2) when parties share a common defense, typically in the criminal context (i.e., joint defense privilege); or (3) when two or more clients share a common legal or commercial interest and share legal advice with respect to that

common interest (i.e., common interest arrangement).[7]  Broessel, 238 F.R.D. at 219-20 (citing Epstein, The Attorney-Client Privilege at 200-06); see also Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 347 (N.D. Ohio 1999) (detailing similar situations).

Such arrangements may be written or oral.  See Goetz, 879 F. Supp. 2d at 898 (citing In re Grand Jury Subpoena, A. Nameless Lawyer, 274 F.3d 563, 569-70 (1st Cir. 2001)); Polylok, Inc. v. Bear Onsite, LLC, No. 3:12-cv-00535, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017); see also N. Am. Rescue Prod., Inc. v. Bound Tree Med., LLC, No. 2:08-cv-101, 2010 WL 1873291, at *4 (S.D. Ohio May 10, 2010) (citing Broessel, 238 F.R.D. at 219).  Proof is needed that the "parties clearly and specifically agree to the joint venture in some manner . . . ."  Cooey v. Strickland, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (citing Federal Rules of Evidence

---

[7] The terms joint defense privilege and common interest arrangement have been used interchangeably in some cases.  See, e.g., Goetz, 879 F. Supp. 2d at 898.  However, the two concepts are distinct.  The assertion of the "joint defense privilege requires the information exchange to occur within the context of actual or threatened litigation."  James M. Fischer, The Attorney-Client Privilege Meets the Common Interest Arrangement: Protecting Confidences While Exchanging Information for Mutual Gain, 16 Rev. Litig. 631, 633 (1997).  In contrast, "[i]t is not necessary that a [common interest arrangement] be derived from legal action; it is possible for two or more parties to share a common interest without becoming parties to the same litigation."  Cooey v. Strickland, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (citing MPT, Inc. v. Marathon Labels, Inc., No. 1:04-cv-2347, 2006 WL 314435, at *6 (N.D. Ohio Feb. 9, 2006), rev'd in part on other grounds, 258 F. App'x 318 (Fed. Cir. 2007)); see also Goetz, 879 F. Supp. 2d at 898 (collecting cases).

Manual 501.02(5)(e)(ii)). Defendant bears the burden of establishing one of these instances. United States v. Moss, 9 F.3d 543, 550 (6th Cir. 1993) (citations and quotation marks omitted).

The third instance, the common interest arrangement, applies here. The Restatement illustrates that doctrine:

> Lawyer One separately represents Corporation A and Lawyer Two represents Corporation B in defending a products-liability action brought by a common adversary, Plaintiff X. The two lawyers agree to exchange otherwise privileged communications of their respective clients concerning settlement strategies. Plaintiff Y later sues Corporation A and Corporation B for damages for alleged defects involving the same products and attempts to obtain discovery of the communications between Lawyer One and Lawyer Two. The communications exchanged between the lawyers for Corporation A and Corporation B are privileged and cannot be discovered.

Restatement (Third) of the Law Governing Lawyers § 76 (2000). To establish the existence of a common interest arrangement, the asserting party must show: (1) the communications were made by separate parties in the course of a matter of common interest; (2) the communications were designed to further that effort; and (3) the underlying privilege exists and has not been waived. United States ex rel. Scott v. Humana, Inc., No. 3:18-cv-61, 2019 WL 7403966, at *3 (W.D. Ky. Sept. 18, 2019) (citing Harper v. Everson, No. 3:15-cv-00575, 2016 WL 8201785, at *7 n.5 (W.D. Ky. June 27, 2016)).

EPE first argues that the City did not meet its burden to prove a common interest arrangement because the City did not prove

the "arrangement's existence, and its terms and scope[.]"  (ECF
No. 233 at 11) (citing <u>Minebea Co., Ltd. v. Papst</u>, 228 F.R.D. 13,
16 (D.D.C. 2005).)   EPE argues that the City did not offer
sufficient evidence to show that the parties had a meeting of the
minds to establish such an arrangement.  (See <u>id.</u>)  Whether there
is a common interest arrangement exists is a question of fact.
See <u>N. Am. Rescue Prod., Inc.</u>, 2010 WL 1873291, at *3-4.

Addressing the existence of a common interest arrangement,
the Magistrate Judge opined,

> [b]ased on the declarations provided by the City, the court
> is satisfied that in early December 2017, the City, the
> County, and Memphis Basketball, LLC and their attorneys all
> entered into an oral agreement regarding privileged
> communications related to the defense of EPE's Shelby County
> Chancery Court lawsuits.  The court is also satisfied that
> all three state court defendants had an identical 'common
> interest' in the subject matter of EPE's Shelby County
> Chancery Court lawsuits.  All three state court defendants
> are parties to the Arena Use Agreement.  EPE's November 15,
> 2017 lawsuit sought a declaratory judgment that public
> funding of EPE's arena project would not violate the Arena
> Use Agreement.

(ECF No. 217 at 7-8) (citations omitted.)  The Magistrate Judge
determined that an evidentiary hearing was unnecessary.  (<u>Id.</u> at
9.)  The evidence on which the Magistrate Judge relied supports
her finding that the parties entered into an oral common interest
arrangement.  (See ECF No. 175-1 ¶ 6; No. 175-2 ¶ 9; No. 175-3
¶¶ 5-6.)  Her construction of that evidence is reasonable.  (<u>Id.</u>)
The Magistrate Judge's did not clearly err in her determination

that the City entered into a common interest arrangement.  <u>See</u>
<u>Heights Cmty. Cong.</u>, 774 F.2d at 140-41.

In reaching her decision, the Magistrate Judge relied on
<u>Cooey</u>, which stated that, to establish a common interest
arrangement, "the parties [must] clearly and specifically agree to
the joint venture in some manner[.]"  (<u>See</u> ECF No. 217 at 7-8)
(citing 269 F.R.D. at 652.)  EPE argues that the law mandates a
higher standard that requires the parties to establish the "terms
and scope" of the arrangement in addition to its existence.  (<u>See</u>
ECF No. 233 at 11-13.)  This Court considers whether the Magistrate
Judge applied the proper law under a "contrary to law" standard.

There is legal authority to support EPE's argument that a
common interest arrangement requires evidence of its terms and
scope.  <u>See</u> <u>Minebea Co., Ltd.</u>, 228 F.R.D. at 16 ("[A] written
agreement is the most effective method of establishing the
existence of a joint defense agreement, although an oral agreement
whose existence, terms and scope are proved by the party asserting
it, may be enforceable as well.").  There is also legal authority,
however, to support the Magistrate Judge's conclusion.  <u>See</u> <u>Cooey</u>,
269 F.R.D. at 652 ("It is not necessary that parties express this
agreement in writing; so long as the parties clearly and
specifically agree to the joint venture in some manner, the
doctrine will apply.") (citation omitted); <u>see also</u> <u>N. Am. Rescue</u>
<u>Prod., Inc.</u>, 2010 WL 1873291, at *4 (needing "some evidence of an

agreement") (citing Broessel, 238 F.R.D. at 219).  The Magistrate Judge did not act contrary to law.  See Hyland, 2012 WL 1680109, at *3 ("Although legal authority may support an objection, the critical inquiry is whether there is legal authority that supports the magistrate's conclusion. . . .").

EPE argues the Magistrate Judge erred in finding that the communications withheld met the common interest arrangement's requirement that each of the specific communications at issue be in furtherance of the parties' common interest, (see ECF No. 233 at 12-15), and the common interest arrangement's requirement that each communication at issue be protected by an attorney-client privilege, (id. at 15-16).  Whether an attorney-client privilege applies is a mixed question of fact and law.  In re Columbia, 293 F.3d at 293.

"The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client."  Ross v. City of Memphis, 423 F.3d 596, 600 (6th Cir. 2005) (citation and internal quotation marks omitted).  Because the common interest privilege "is not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party," Broessel, 238 F.R.D. at 219, there is still a requirement that the underlying communications be

protected by an attorney-client privilege, that is, the communications contain protected client information. See Carolina Power & Light Co. v. 3M Co., 278 F.R.D. 156, 161 (E.D.N.C. 2011) (to qualify for the "common interest privilege," communications must first satisfy the requirements for the attorney-client privilege); Grochocinski v. Mayer Brown Rowe & Maw LLP, 251 F.R.D. 316, 327 (N.D. Ill. 2008) ("Before asserting the [common interest] doctrine, however, the parties must first establish that the underlying documents withheld were otherwise privileged before the common interest doctrine arose."). If a common interest arrangement is established and contains protected client information, it protects the following communications:

(1) By the attorney for one party to the other party's attorney[;]

(2) By one party to the other party's attorney[;]

(3) By one party to its own attorney, if in the presence of the other party's lawyer[;] and

(4) From one party to another, with counsel present[.]

Wright & Miller, Federal Practice and Procedure § 5493 (1st ed.) (citing Selby v. O'Dea, 2017 IL App (1st) 151572, 90 N.E.3d 1144).

Addressing the underlying communications here, the Magistrate Judge opined, "[a]fter review of the City's Revised Privilege Log, the court is satisfied that all other communications listed on the City's revised privilege log are privileged attorney-client communications protected by the common-interest doctrine." (ECF

No. 217 at 9) (citation omitted.)  The Magistrate Judge found that each communication was in furtherance of the parties' common interest (defending against EPE's Shelby County Chancery Court suits) and that the communications were the type protected by the attorney-client privilege (privileged communications of their respective clients concerning settlement and defense strategies against the Shelby County Chancery Court suits).  (See id.)  The evidence supports those findings.  (See ECF No. 216.)  They were not clearly erroneous or contrary to law.

EPE argues that the communications cannot constitute attorney-client privileged communications because they are not between an attorney and a client, but between two attorneys.  (See ECF No. 233 at 16.)  That argument fails because communications between attorneys may be protected under a common interest arrangement if the communications are in furtherance of a common interest and the communications contain privileged client communications, as they do here.  See Cooey, 269 F.R.D. at 653 (finding "no waiver of the attorney-client privilege" when the "attorneys involved in th[e] matter communicated among themselves with a common interest"); see also Wright & Miller, § 5493 (communications between "the attorney for one party to the other party's attorney" are protected).

EPE challenges the sufficiency of the descriptions in the privilege log.  (See ECF No. 233 at 16-17.)  Courts in this Circuit

27

have held that a privilege log is sufficiently descriptive if it includes:

> (a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions;
>
> (b) The document's date;
>
> (c) The purpose and subject matter of the document; and
>
> (d) The nature of the privilege[] asserted, and why the particular document is believed to be privileged.

Polylok, Inc., 2017 WL 1102698, at *5-6 (collecting cases). The Magistrate Judge found that the privilege log was sufficiently detailed because it met the Polylok criteria. (See ECF No. 217 at 9.) The evidence supports that finding. The Magistrate Judge's application of Polylok was not contrary to law. (See ECF No. 216.)

EPE's objections are OVERRULED. The Magistrate Judge's March 12, 2020 Order is AFFIRMED.

### C. Appeal of March 20, 2020 Order

In her March 20, 2020 order, the Magistrate Judge granted the City's motion for a protective order to quash the deposition of Mayor Strickland. (ECF No. 242.)

A court, for "good cause," may issue an order forbidding certain discovery to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly

defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." Nix v. Sword, 11 F. App'x 498, 500 (6th Cir. 2001) (citation omitted).  The movant bears the burden to show good cause.  Id.  A court "must limit" discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."  Fed. R. Civ. P. 26(b)(2)(C)(i).

District courts in this Circuit have applied the "apex doctrine" in applying Rule 26 to high-ranking government officials.[8]  See Duncan v. Husted, No. 2:13-cv-1157, 2015 WL 631103, at *2-3 (S.D. Ohio Feb. 12, 2015); cf. Serrano v. Cintas Corp., 699 F.3d 884, 901 (6th Cir. 2012) (collecting cases applying the apex doctrine to corporate executives).

> [T]he apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking [government official] either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1).  Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition.

---

[8]  The apex doctrine has been applied to both high-ranking government officials and corporate executives.  The analysis is the same as to both. See EMW Women's Surgical Ctr., P.S.C. v. Glisson, et al., No. 3:17-cv-00189-GNS, 2017 WL 3749889, at *3 (W.D. Ky. Aug. 30, 2017); Turner v. City of Detroit, No. CIV.A. 11-12961, 2012 WL 4839139, at *2 (E.D. Mich. Oct. 11, 2012).

<u>Turner v. City of Detroit</u>, No. 11-cv-12961, 2012 WL 4839139, at *2 (E.D. Mich. Oct. 11, 2012) (citation omitted).  This Circuit has said that, "in reviewing the grant or denial of a protective order [under the apex doctrine] . . . [there is still] the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order."  <u>Serrano</u>, 699 F.3d at 901.

There is an exception to the apex doctrine when an official has first-hand knowledge of the claim being litigated.  <u>Boudreau v. Bouchard</u>, No. 07-10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008) (collecting cases), <u>opinion amended on reconsideration</u>, No. 07-10529, 2009 WL 55912 (E.D. Mich. Jan. 8, 2009).  Even in such cases, however, discovery is only permitted if it is shown that other persons cannot provide the necessary information (<u>i.e.</u>, if the information is unique to the high-ranking government official).  <u>See</u> <u>EMW Women's Surgical Ctr., P.S.C. v. Glisson, et al.</u>, No. 3:17-cv-00189-GNS, 2017 WL 3749889, at *2 (W.D. Ky. Aug. 30, 2017) (citations omitted).

The Magistrate Judge found that there was good cause, that the City had articulated a specific harm under Rule 26(c)(1)(A), (ECF No. 225 at 16), and that, although Mayor Strickland had some first-hand knowledge of the claim being litigated, (<u>see</u> <u>id.</u> at 14-15), his knowledge was not unique to him and others could provide the necessary information, (<u>see</u> <u>id.</u> at 16-17).  Whether there is

good cause to enter a protective order is a mixed question of fact and law.  See In re Ohio Execution Protocol Litig., 845 F.3d 231, 237-38 (6th Cir. 2016).

EPE argues the Magistrate Judge erred in finding good cause to enter the protective order, specifically, in her finding that the information EPE seeks from Mayor Strickland could be obtained from other sources.  (ECF No. 242 at 5-10.)  EPE argues that the information it seeks relates to the City's "retaliatory motivation and intent," (see ECF No. 268 at 3-4), and argues that "Mayor Strickland . . . is the only person who can testify regarding the origin and intent for the City's retaliatory conduct," (ECF No. 242 at 6).  EPE argues that "[i]t is reasonable to conclude that while other city officials may have been the face of [t]he City's retaliatory actions against EPE, Mayor Strickland directed his staff members and/or political appointees to act on his behalf." (Id. at 7.)

The Magistrate Judge considered EPE's intent argument and found that Mayor Strickland had no involvement in the OPD's decision to delay consideration of EPE's application.  (See ECF No. 225 at 7, 15.)  The Magistrate Judge found that the evidence EPE submitted did not support a finding that the Mayor directed anyone to take retaliatory acts against EPE.  (See id. at 14-15.)  The Magistrate Judge's conclusion was reasonable and supported by the record.  (ECF No. 167-3); see Graves v. Bowles, 419 F. App'x

31

640, 645 (6th Cir. 2011) (upholding a protective order when the mayor "submitted affidavits averring that he had no personal knowledge of the events or investigation underlying the case"); Watson v. City of Cleveland, 202 F. App'x 844, 852 (6th Cir. 2006) (upholding protective order when the defendant's case focused on actions undertaken by various members of the mayor's administration and involved the mayor only to the extent that the mayor supervised city employees and had very little information related to plaintiff's claims and none that was unavailable from another source); Nix, 11 F. App'x at 500 (upholding a protective order of a congressman when the congressman submitted an affidavit stating that it would be difficult for him to schedule a deposition because of his legislative duties; he had no personal knowledge about the alleged conduct; he was not related to an agent working on the case, who had the same last name; and he never discussed the suit with any of the defendants).  The Magistrate Judge did not clearly err.  See Heights Cmty. Cong., 774 F.2d at 140-41.

EPE's objections are OVERRULED.  The Magistrate Judge's March 20, 2020 Order is AFFIRMED.

### D. Appeal of April 6, 2020 Order

In the Magistrate Judge's April 6, 2020 Order, she granted an order protecting documents subject to Rule 45 subpoenas issued by EPE to former Memphis City Councilman Kemp Conrad and his employer

Commercial Advisors, LLC.[9]  (ECF No. 245.)  The Magistrate Judge
reasoned that there was good cause under Rule 26(b)(2)(C)(ii) to
issue a protective order because the written discovery deadline in
the case had passed and EPE could have obtained the documents
through their requests for production pursuant to the parties' ESP
Agreement.  (See id. at 11-13.)  The Magistrate Judge found that
EPE was attempting to use Rule 45 to circumvent the Court's
discovery deadlines.  (See id. at 13.)  Whether there is good cause
to enter a protective order is a mixed question of fact and law.
See In re Ohio, 845 F.3d at 237-38.

Rule 45 governs the issuance of subpoenas to non-parties.
Baumer v. Schmidt, 423 F. Supp. 3d 393, 398 (E.D. Mich. 2019).
The Rules anticipate that production of documents and things from
parties will be accomplished through Rule 34.   Roofers Local 149
Sec. Benefit Tr. Fund v. Milbrand Roofing Grp., Inc., No. 05-cv-
60218, 2007 WL 2421479, at *1 (E.D. Mich. Aug. 22, 2007).  "Rule
34(c) specifically directs that production of documents and things
from non-parties be done by subpoena under [Rule] 45."  Id.  The
scope of discovery under Rule 45 is the same as the scope of
discovery under Rule 26.   Baumer, 423 F. Supp. 3d at 408 (citing

---

[9] The subpoenas seek communications by and among Conrad and McMullen,
Mayor Strickland, McGowan, and other City officials or representatives
about EPE and/or the Graceland Project, as well as communications Conrad
might have had with EPE representatives in his capacity as a member of
the Memphis City Council.

*Callidus Capital Corp. v. FCA Grp.*, No. 14-10484, 2018 WL 1556231, at *3 (E.D. Mich. Mar. 30, 2018)). Under Rule 26, a Court "must limit" the scope of discovery when the party "seeking discovery has had ample opportunity to obtain the information" sought. Fed. R. Civ. P. 26(b)(2)(C)(ii). Subpoenas issued under Rule 45 are a discovery device subject to the same deadlines as other forms of discovery, including deadlines in a court's scheduling order. *Fabery v. Mid-S. Ob-GYN*, No. 06-2136 D/P, 2000 WL 35641544, at *1 (W.D. Tenn. May 15, 2008) (collecting cases). Rule 45 may not be used to circumvent discovery deadlines and discovery that could have been sought under Rule 34. See *Neel v. Mid-Atl. of Fairfield, LLC*, No. 10-cv-405, 2012 WL 98558, at *1 (D. Md. Jan. 11, 2012).

The relevant part of the Magistrate Judge's order reads:

> The Court considers this subpoena to be a subpoena for documents belonging to the City, a party to this litigation. Discovery from a party can be obtained under Rule 34. Written discovery from parties ended on July 30, 2019. The court will not allow EPE to circumvent its scheduling orders by seeking documents from a party by a Rule 45 subpoena. EPE could have discovered the information by including Conrad as a City representative, custodian, sender, or recipient when it negotiated the Electronic Search Protocol Agreement. To allow EPE to use Rule 45 to circumvent the requirements of a court-mandated discovery deadline would clearly be contrary to the traditional interpretation of the Federal Rules of Civil Procedure . . . .

(ECF No. 245 at 13) (citation omitted.) EPE argues that the Magistrate Judge misstated the discovery deadline as July 30, 2019, and that her subsequent reliance on that misstatement in finding good cause under Rule 26 was clearly erroneous. (See ECF No. 260

at 4-5.) EPE cites the Amended Scheduling Order, in which the Court set March 31, 2020 as the deadline for "COMPLETING ALL DISCOVERY." (Id. at 4) (citing ECF No. 73.)

The Court's original scheduling order set July 30, 2019 as the written discovery deadline. (ECF No. 19 at 2.) On July 30, 2019, EPE served its written discovery requests on the City. (See ECF No. 177-1.) On August 20, 2019, the parties jointly sought to extend certain deadlines, including the deadline to complete depositions. (ECF No. 65.) The parties specifically stated that they "are not requesting an extension of any Scheduling Order deadlines that have already passed." (Id. ¶ 9.) When the parties asked to extend some deadlines, such as the deadline to complete depositions, the written discovery deadline had already passed. (See id.) On September 9, 2019, the Court entered an Amended Scheduling Order. (ECF No. 73.) The Court did not alter the written discovery deadline, which had passed; it changed only the remaining discovery deadlines. (See id.; ECF No. 65 ¶ 9.) Because the written discovery deadline in this case was July 30, 2019, the Magistrate Judge's reliance on that deadline in finding that EPE's February 6, 2020 Rule 45 subpoenas were untimely is not clear error.

EPE argues that the Magistrate Judge's ruling granting a protective order was inconsistent with her prior rulings. (ECF No. 260 at 5.) EPE argues that, before the contested order, the

Magistrate Judge had "reasoned consistently that a party has the right to request similar documents and information from different entities as a way to confirm that [the parties] ha[d] received the full universe of responsive documents." (Id.) EPE refers to a prior ruling in which the Magistrate Judge denied EPE's motion to quash and allowed the City to propound subpoenas to three non-parties. (Id. at 6) (referencing ECF No. 149.)

EPE misunderstands the reasoning supporting the Magistrate Judge's denial of EPE's previous motion and her granting the City's motion for a protective order. In her prior ruling, the Magistrate Judge rejected EPE's arguments challenging the scope and substance of the City's subpoenas.[10] (See ECF No. 149 at 7-10.) EPE never argued that the subpoenas were issued after the relevant scheduling order deadline or were the subject of written discovery the City had previously served on EPE. The City challenged EPE's subpoenas on the grounds that EPE sought documents that should have been sought in EPE's written discovery but were not, and that the subpoenas were untimely, and were improperly requested under Rule 45. (ECF No. 185-1 at 7.) The Magistrate Judge's rulings are not inconsistent.

---

[10] EPE argued that its motion to quash should be granted because the subpoenas: "(i) seek privileged, protected, and confidential materials; (ii) are unduly burdensome; and (iii) improperly seek documents that are not relevant to the claims and defenses in this lawsuit." (ECF No. 149 at 4.)

EPE argues that the Magistrate Judge erred in relying on the ESP Agreement to support good cause for entering a protective order. (ECF No. 260 at 7.) EPE argues that the ESP Agreement relates only to written discovery and does not prevent a party from propounding a Rule 45 subpoena to a non-party. (Id.) The Magistrate Judge found that, although Conrad was not a party, the documents EPE sought to obtain through the subpoenas belonged to the City. (ECF No. 245 at 12-13.) Because the City is a party to this litigation, it is bound by the terms of the ESP Agreement. (Id. at 13.)

EPE does not challenge the Magistrate Judge's finding that the documents sought belonged to the City, but objects to her application of the law. (See ECF No. 260 at 7.) Because EPE could have sought the documents under the ESP Agreement (which supplemented the City's Rule 34 obligations), and did not, the Magistrate Judge entered a protective order. (See id.) That was not contrary to law. See Neel, 2012 WL 98558, at *1 (Rule 45 may not be used to circumvent discovery that could have been properly sought under Rule 34); Roofers Local 149 Sec. Benefit Tr. Fund, 2007 WL 2421479, at *1 (["T]he Advisory Committee did not anticipate that Rule 45 would be used to obtain documents from a party instead of Rule 34."). The Magistrate Judge did not err.

EPE argues that the Magistrate Judge incorrectly found that the City had standing to challenge the issuance of the subpoenas.

The Magistrate Judge concluded that the "documents are potentially attorney-client privileged," although the City did not assert that privilege.  (ECF No. 260 at 7.)

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." HDSherer LLC v. Nat. Molecular Testing Corp., 292 F.R.D. 305, 307 (D.S.C. 2013) (citations omitted).  However, "[u]nder Rule 26(c), a party may move for a protective order to protect itself from annoyance, embarrassment, oppression, or undue burden or expense, regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule . . . ."  Id. (quotation marks and citation omitted).

The relevant portion of the Magistrate Judge's ruling reads:

> Even if the City lacked standing under Rule 45 to move to quash the Conrad Subpoenas, the City has standing to challenge the subpoenas via a protective order under Rule 26, "regardless of whether [it has] standing to bring a motion to quash under Rule 45" because it has an interest in these documents as belonging to the City and because the documents are potentially attorney-client privileged.

(ECF No. 245 at 11) (citation omitted.)

The Magistrate Judge's basis for concluding that the documents were potentially attorney-client privileged was not a conclusion that they were protected, but rather that the City had standing to seek a protective order because it had a potential

interest in preventing disclosure.[11]   (See ECF No. 245 at 11);
HDSherer LLC, 292 F.R.D. at 307.   That was not contrary to law.
The Magistrate Judge did not err.

EPE's objections are OVERRULED.   The Magistrate Judge's April
6, 2020 Order is AFFIRMED.

### E. Appeal of April 24, 2020 Order

In her April 24, 2020 Order, the Magistrate Judge concluded
that "the City's March 18, 2020 supplemental production complied
with the City's discovery obligations and the court's March 6,
2020 order" and "spoliation sanctions are not warranted because
EPE has failed to demonstrate that it was prejudiced by the City's
failure to produce the text messages."   (ECF No. 265 at 10-12.)
Whether a party has satisfied its discovery obligations is a mixed
question of fact and law.   A determination of prejudice due to
spoliation is a mixed question of fact and law.

Rule 26(b) sets forth six factors for the court to consider
when determining whether a party is entitled to discovery: (i) the
importance of the issues at stake in the action; (ii) the amount
in controversy; (iii) the parties' relative access to relevant
information; (iv) the parties' resources; (v) the importance of
the discovery in resolving the issues; (vi) and whether the burden

---

[11] The Magistrate Judge also concluded that the City had an interest in
protecting the documents because they belonged to the City.   (ECF No.
245 at 11.)   That is an alternative basis for affirming her order.

or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b).  Magistrate Judges are entitled to broad

deference in determining whether discovery obligations are

satisfied.  See Farmers & Merchants Nat. Bank v. San Clemente Fin.

Grp. Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997).

Rule 37(e) governs sanctions for failure to preserve

electronically stored information, such as text messages:

> If electronically stored information that should have been
> preserved in the anticipation or conduct of litigation is
> lost because a party failed to take reasonable steps to
> preserve it, and it cannot be restored or replaced through
> additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of
> > the information, may order measures no greater than
> > necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the
> > intent to deprive another party of the information's use
> > in the litigation may:
> >
> > > (A)  presume that the lost information was
> > > unfavorable to the party;
> > > (B)  instruct the jury that it may or must presume
> > > the information was unfavorable to the party;
> > > or
> > > (C)  dismiss the action or enter a default
> > > judgment.

Fed. R. Civ. P. 37(e).  Rule 37 contains a prejudice requirement

and "only applies if the information cannot be restored or replaced

through additional discovery."  Katebian v. Missaghi, No. 18-

13379, 2020 WL 1285638, at *7 (E.D. Mich. Mar. 18, 2020) (emphasis

omitted); Yoe v. Crescent Sock Co., No. 1:15-cv-3-SKL, 2017 WL

5479932, at *11 (E.D. Tenn. Nov. 14, 2017) ("[Amended] Rule 37(e)

eliminates the requirement of a culpable state of mind; instead, the rule now focuses on prejudice to the moving party."). "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." Paisley Park Enterprises, Inc. v. Boxill, 330 F.R.D. 226, 236 (D. Minn. 2019).

EPE argues that the Magistrate Judge erred in determining that: (1) the City's supplemental production complied with the City's discovery obligations; (2) the City had no obligation to preserve the relevant text messages; (3) McMullen did not possess a culpable state of mind when he deleted the text messages; and (4) the deleted text messages were relevant to the claim. (ECF No. 276 at 5-11.)

The Magistrate Judge held that the City's supplemental production complied with the City's discovery obligations. (ECF No. 265 at 11-12.) EPE objected to her holding. (ECF No. 276 at 5-8.) The Magistrate Judge held that EPE was not prejudiced by the City's failure to produce the deleted text messages because EPE obtained the deleted text messages from a third party. (ECF No. 265 at 10-11.) It its appeal, EPE does not object to that finding, but to findings the Magistrate Judge never made.[12] (See

---

[12] The Magistrate Judge assumed without deciding that the "the City was under an obligation to preserve McMullen's text messages at the time they were destroyed in November 2017" and that the "text messages were

41

ECF No. 276 at 8-11.)   To the extent that EPE objects in its reply that the Magistrate Judge erred in finding that EPE would not be prejudiced, (see ECF No. 295 at 3-4), EPE's objection is not well taken.

### 1. Discovery Obligations

Addressing satisfaction of the City's discovery obligations, the Magistrate Judge concluded:

> The court is satisfied that the City's March 18, 2020 supplemental production complied with the City's discovery obligations and the court's March 6, 2020 order. EPE's claim that the City purposefully withheld numerous responsive text messages is unfounded.   If other responsive text messages involving McMullen were withheld, they would have likely surfaced in EDGE's production of documents in response to EPE's non-party subpoena.   The court's March 6, 2020 order made clear that the City was obligated only to produce text messages containing the search terms set forth in the Electronic Search Protocol Agreement.   (See Order ¶ 5, ECF No. 215.)   If anything, the City went beyond its obligation by producing text messages between McMullen and Mark Beutelschies that did not contain any of the search terms set forth in the Electronic Search Protocol Agreement.   (See Defs.' Resp. 3-4 n.4, ECF No. 250.)

(ECF No. 265 at 11-12.)   In reaching her conclusion, the Magistrate Judge reviewed the supplemental text messages that were produced and McMullen's testimony that he did not intentionally destroy or withhold text messages and that the text messages were not on his cellular telephone when he searched it.   (See id. at 6-7.)

---

destroyed with the required 'culpable state of mind'. . . ." (ECF No. 265 at 10.)

The Magistrate Judge did not err in concluding that the City had complied with its discovery obligations and denying EPE's request for further production. There is evidence in the record to support her determination. (See ECF No. 250-1 ¶¶ 5-9); see also Wells v. JPC Equestrian, Inc., No. 3:13-cv-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014) ("It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist.").

**2. Prejudice**

"Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." Paisley Park Enterprises, Inc., 330 F.R.D. at 236. The Magistrate Judge held that EPE was not prejudiced by the City's failure to produce the deleted text messages because EPE was "in possession of the November 2017 text messages pursuant to the production of documents [by the third party]" and EPE was "free to use these text messages during and throughout the remainder of this case." (ECF No. 265 at 10-11.) EPE argues that Magistrate Judge erred and that EPE was prejudiced because "it created an additional hurdle for EPE" and "it improperly eliminated the City from its discovery obligation." (ECF No. 295 at 3-4.)

The Magistrate Judge did not err in denying EPE's request for sanctions. See Automated Sols. Corp. v. Paragon Data Sys., Inc., 756 F.3d 504, 513 (6th Cir. 2014) (a determination not to impose

sanctions is not erroneous if a court determines that a party has not satisfied either the preservation or prejudice prongs of Rule 37) (citing Adkins v. Wolever, 692 F.3d 499, 504 (6th Cir. 2012)). There is evidence in the record to support the Magistrate Judge's factual determination that EPE was in possession of the deleted text messages. (ECF No. 238-1.) There is law to support her determination that EPE was not prejudiced because EPE obtained the deleted text messages. See, e.g., Lee v. Horton, 2018 WL 4945242, at *2 (W.D. Tenn. Sept. 4, 2018), report and recommendation adopted, 2018 WL 4600303 (W.D. Tenn. Sept. 25, 2018) (denying spoliation sanction motion where the moving party was not prejudiced by the destruction of evidence because the destroyed evidence was available through other means). EPE cites no controlling case law to the contrary.

EPE's objections are OVERRULED. The Magistrate Judge's April 24, 2020 Order is AFFIRMED.

**V. Conclusion**

For the foregoing reasons, EPE's objections are OVERRULED. The Magistrate Judge's orders are AFFIRMED.

So ORDERED this 16th day of July, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE