IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| ELVIS PRESLEY ENTERPRISES, INC., EPPF, LLC, AND GUESTHOUSE AT GRACELAND, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MEMPHIS, TENNESSEE, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:18-cv-2718 |

**ORDER**

This is an action under 42 U.S.C. § 1983 alleging retaliation for First Amendment protected conduct. Plaintiffs Elvis Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland, LLC (collectively "Plaintiffs" or "EPE") allege that the City of Memphis ("the City"), through its attorney, took an action adverse to EPE because EPE had filed state court lawsuits affecting the City. (D.E. No. 1 ¶¶ 71-74.) Defendant the City moved for summary judgement (the "Motion") on February 26, 2020. (D.E. No. 199.) The City supplemented its Motion on July 30, 2020, and added a motion for attorneys' fees (the Motion for Fees). (D.E. No. 310.) The parties have responded and replied. (D.E. No. 312; D.E. No. 314; D.E. No. 318-1.) The City moved to

exclude testimony from consideration ("Motion to Exclude") on September 14, 2020. (D.E. No. 316.) EPE responded to the Motion to Exclude on September 28, 2020. (D.E. No. 320.) For the following reasons, the Motion to Exclude is **DENIED** as moot, the Motion for Fees is **DENIED**, and the Motion is **GRANTED**.

## I. Background

EPE owns and operates Graceland, the former home of Elvis Presley and a tourist attraction in Memphis, Tennessee. (Pl.'s Statement of Additional Undisputed Material Facts, D.E. No. 312-2 ¶ 1.)

In 2014, EPE undertook the Graceland Project, a planned redevelopment of Graceland. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, D.E. No. 312-1 ¶ 3.) To help fund the Graceland Project, EPE submitted EPE's Economic Impact Plan for Graceland Economic Development Area (the "Plan") to the City, Shelby County, Tennessee (the "County"), and the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby ("EDGE"). (Id.) The Plan included a request for tax increment financing, which would earmark a certain amount of property taxes to support the Graceland Project. (Id.) EDGE, the City, and the County approved the Plan in late 2014. (Id. ¶ 5.)

In 2017, hoping to expand the Graceland Project, EPE submitted its Supplement to Economic Impact Plan for Graceland

Economic Growth Area (the "Supplemental Plan") to EDGE. (Id. ¶ 6.) The Supplemental Plan requested approval, among other things, of an arena capable of seating 6,200 people (the "Arena"). (Id.)

While EDGE considered the Supplemental Plan, Memphis Basketball, LLC ("Memphis Basketball") contacted the City. (Def.'s Statement of Undisputed Material Fact, D.E. No. 199-1 ¶ 7.) Memphis Basketball owns and operates the Memphis Grizzlies, a National Basketball Association franchise. (Id. ¶ 1.) Memphis Basketball contended that the City's approval of the Arena would violate a contract between Memphis Basketball and the City (the "Arena Use Agreement"), prohibiting the City from providing public financing for competing entertainment facilities. (Id. ¶ 7.)

EDGE told EPE that EDGE would not move forward with the approval process for the Supplemental Plan based on Memphis Basketball's concerns. (See id. ¶ 11.)

EPE responded by filing a declaratory judgment action in Tennessee Chancery Court. (D.E. No. 312-1 ¶ 12.) EPE asked the court to interpret the Arena Use Agreement. (Id.) EPE contended that the Agreement did not prohibit the City from approving the Arena. (Id.) The Chancery Court dismissed the case, concluding that EPE had to demand that EDGE consider and vote on the

3

Supplemental Plan before EPE could seek a declaratory judgment. (Id. ¶ 13.)

In February 2018, after the Chancery Court's decision, EPE asked EDGE to vote on the Supplemental Plan at its next meeting. (D.E. No. 312-2 ¶ 18.)  EDGE did not do so.  (See D.E. No. 312-1 ¶ 15.)  EPE sued EDGE attempting to force EDGE to vote on the Supplemental Plan.  (Complaint, D.E. No. 1 ¶ 56.)  Eventually, however, EDGE approved the Supplemental Plan but conditioned its approval on a court order or written agreement declaring that approval of the Arena would not breach the Arena Use Agreement. (Id. ¶ 14)

The County also approved the request in the Supplemental Plan for increased tax increment financing to support the expanded Graceland Project. (Id. ¶ 16.)  As EDGE had done, the County conditioned its approval on a court order or written agreement declaring that approval of the Arena would not breach the Arena Use Agreement. (Id.)

In late June 2018, EPE filed a declaratory judgment action in Tennessee Chancery Court against the City, Memphis Basketball, and the County to determine whether approval of the Arena would violate the Arena Use Agreement. (Id. ¶ 17)

While that case was pending, EPE sought to move forward with parts of the expanded Graceland Project.  (See D.E. No. 312-1 ¶ 19.)  EPE submitted its Application for Planned

4

Development Approval (the "Development Application") to the Memphis and Shelby County Office of Planning and Development (the "OPD") in August 2018. (Id.) The Development Application included the Arena. (Id. ¶ 21.)

The OPD neither approved nor denied the Development Application. (See id. ¶ 27.) Instead, it decided to table consideration of the Application indefinitely, until the Chancery Court litigation over the Arena had concluded. (Id.) The OPD's decision followed instructions from the Memphis City Attorney. (See id.) In an email, the OPD planning director told EPE that:

> Earlier this week, the City Attorney requested that [the Development Application] be deferred until the pending litigation in Chancery Court is concluded. I have conferred with my in-house Division attorney and he agrees. Therefore, [the Development Application] will not be considered . . . until such time as the pending legislation [sic] is concluded.

(Id.)

EPE had two administrative options following deferral of the Development Application. (Id. ¶ 35.) EPE could resubmit the Development Application without including the Arena as part of the application. (Id.) EPE could also appeal the decision to defer consideration of the Development Application by the OPD planning director. (Id.) EPE has not taken either administrative action. (See id. ¶ 36.)

5

EPE filed its complaint in this case on October 16, 2018. (D.E. No. 1.)  EPE alleges that the City, through the city attorney, blocked the OPD from considering the Development Application. (D.E. No. 1 ¶ 82.) EPE alleges that the City did so for two reasons. (Id. ¶¶ 82, 91.) The first is punitive.  The City wanted to punish EPE for disagreeing with the City about the  contract with Memphis Basketball, obtaining EDGE and the County's conditional approvals of the Supplemental Plan, suing the City twice in Chancery Court, and commenting publicly about those matters.  (Id. ¶ 82.)  The second reason is coercive. The City wanted to deter EPE from maintaining its latest suit against the City and from pursuing similar conduct designed to protect EPE's rights and interests. (Id. ¶ 91.)

On November 6, 2018, the City filed a motion to dismiss for failure to state a claim.  (D.E. No. 8.)  The motion to dismiss was granted on EPE's state law claims of interference with contractual relationships and interference with business relationships and denied on EPE's § 1983 claim.  (D.E. No. 63.)

**II. Jurisdiction**

The Court has federal question jurisdiction.  Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  EPE asserts a right to relief

6

against the City under § 1983.  That claim arises under the laws of the United States.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he moving party is entitled to summary judgment when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" George v. Youngstown State University, 966 F.3d 446, 458 (6th Cir. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

The non-moving party has the duty to point out specific evidence in the record sufficient to justify a jury decision in its favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  A genuine dispute for trial exists if the evidence is "'such that a reasonable jury could return a verdict for the nonmoving party.'"  See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467

7

(6th Cir. 2012) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "[I]n order to survive a summary judgement motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" <u>Lossia v. Flagstar Bancorp, Inc.</u>, 895 F.3d 423, 428 (6th Cir. 2018) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

   **A.   Ripeness**

The City argues that EPE's retaliation claim is not ripe because there has not been a final decision on the Development Application. (D.E. No. 310.) The Court rejected the City's ripeness claim at the motion to dismiss stage because the Court necessarily accepted two assertions made by EPE as true. <u>See</u> <u>Elvis Presley Enterprises, Inc. v. City of Memphis, Tenn.</u>, No. 2:18-cv-2718, 2019 WL 3804265, at *6 (W.D. Tenn. Aug. 13, 2019) ("<u>EPE I</u>"). At this stage, those assertions no longer need be accepted. First, the Court accepted that the Development

8

Application did not include the Arena. See id. at *6 n.9. This meant that EPE had no way to resubmit the Development Application without the inclusion of the Arena because the Development Application purportedly already did not include the Arena. See id. It is now clear that the Development Application did include the Arena. EPE would be able to resubmit the Development Application without the inclusion of the Arena to determine whether the Development Application could be approved. Second, the Court accepted as true that EPE had no right to appeal from the indefinite delay of the Development Application. See id. at *6 n.10. It is now clear that EPE could appeal the decision to delay the Development Application indefinitely. The Court must consider the City's ripeness argument again at this stage of the litigation.

Whether a claim is ripe for decision is governed by federal law. See Brown v. Ferro Corp., 763 F.2d 798, 801 (6th Cir. 1985) ("The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances."); see also Leonard v. Planning Bd. of the Town of Union Vale, 154 F. Supp. 3d 59, 65 n.5 (S.D.N.Y. 2016) ("[W]here, as here, the basis for the court's federal jurisdiction is the existence of a federal question, federal law

9

governs. Therefore, the Court will analyze the ripeness of Plaintiffs' claims under federal law."). The City relies on the "finality" requirement, a ripeness doctrine particular to land use cases. See Miles Christi Religious Order v. Twp. of Northville, 629 F.3d 533, 537 (6th Cir. 2010). Finality requires that the relevant regulatory body issue a final decision before claims arising from land disputes ripen. See id.; see also Bannum, Inc. v. City of Louisville, Ky., 958 F.2d 1354, 1362-63 (6th Cir. 1992) ("By finality we mean that the actions of the city were such that further administrative action by [the plaintiff] would not be productive.").

### 1. The finality requirement applies to EPE's claim.

Although the finality requirement originated in the context of takings claims, see Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985), overruled on other grounds by Knick v. Twp. of Scott, 139 S. Ct. 2162 (2019), two Sixth Circuit cases have extended the finality requirement to First Amendment retaliation claims, see Dubuc v. Twp. of Green Oak, 406 F. App'x 983, 990-91 (6th Cir. 2011); Insomnia, Inc. v. City of Memphis, 278 F. App'x 609, 616 (6th Cir. 2008). The Insomnia court adopted the following two-prong test for determining whether the finality requirement should preclude a First Amendment retaliation claim: "'(1) whether the [plaintiffs] experienced an immediate injury as a result of [the

10

defendant's] actions and (2) whether requiring the [plaintiffs] to pursue additional administrative remedies would further define their alleged injuries.'" Insomnia, 278 F. App'x at 615 (quoting Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 351 (2d Cir. 2005)).

In Insomnia, plaintiffs claimed their application to subdivide two parcels of land into three was denied because of animus against adult businesses. Id. at 610-11. The Land Use Control Board, which had denied the application, required plaintiffs to resubmit it as a planned development, rather than a subdivision. Id. at 611. Plaintiffs instead appealed to the City Council, which rejected the appeal. Id. Plaintiffs then filed suit in federal court. Id.

The finality requirement applied in Insomnia based on the two-prong Murphy test. Insomnia, 278 F. App'x at 615-16; see Murphy, 402 F.3d at 351. Under the first prong, plaintiffs had not suffered an immediate injury because if they had resubmitted their application as a planned development "there [was] a chance that their proposal [would] be approved" and "under such circumstances, Plaintiffs [would] be entitled to proceed with the subdivision of their land," which would "obviate the need for federal review." Id. at 615. Under the second prong, requiring resubmission of the application as a planned development would, if the plan were rejected, "further define

11

the contours of Plaintiffs' claim of First Amendment retaliation." Id. at 616.

### a. EPE has experienced no immediate injury.

EPE contends not only that it has suffered an immediate injury, but that, because its injury arises outside the land use context altogether, the finality requirement should not apply. EPE claims that the retaliatory act was not the OPD's decision to delay indefinitely, but the city attorney's interference with the OPD's decision.

EPE's injury arises in the context of land use. Interference by the city attorney, on its own, would not be an injury. In Dubuc, the city attorney advised the Building Zoning Administrator to issue no more permits for construction work on a parcel because plaintiffs had filed a lawsuit against the city. Dubuc, 406 F. App'x 983, 985 (6th Cir. 2011). Despite the retaliatory action by the city attorney, the ripeness issue was "tied to [the] finality of the underlying land use decision." EPE I, 2019 WL 3804265, at *6 n.11; see Dubuc, 406 F. App'x at 990-91. In this case, despite the alleged retaliation by the city attorney, the injury stems from the land use decision. EPE I, 2019 WL 3804265, at *10 n.14 ("The source of EPE's harm is the OPD's decision, allegedly instructed by the city attorney, to defer consideration of the Development Application indefinitely.").

EPE also alleges immediate injury stemming from the OPD's decision to delay the Development Plan indefinitely. EPE claims that it is now subject to a "Kafkaesque nightmare" of bureaucracy requiring it to resubmit the Development Plan without the Arena or to appeal the OPD's decision. Resubmitting an altered plan (Insomnia) and appealing from an adverse land use decision (Dubuc), EPE's available administrative remedies, are exactly the administrative remedies that were available in the Sixth Circuit cases applying the finality requirement to retaliation claims. See Insomnia, 278 F. App'x at 615 ("If Plaintiffs file a renewed plan as a proposed development . . . ."); Dubuc, 406 F. App'x at 991 ("Pursuing this ability to appeal . . . ."). Implicit in those decisions is that pursuit of the administrative remedies themselves cannot be the immediate injury. See Dubuc, 406 F. App'x at 991; Insomnia, 278 F. App'x at 615.

EPE alleges that it faces the costs of its inability to move forward with development because of the OPD decision to delay the Development Application indefinitely. That is exactly the type of non-immediate injury that plaintiffs in Dubuc and Insomnia faced. See Dubuc, 406 F. App'x at 990-91; Insomnia, 278 F. App'x at 615.

EPE has experienced no immediate injury.

> **b.    Requiring finality would "further define the contours" of the retaliation claim.**

13

The alleged injuries could be further defined by pursuit of administrative remedies. That demonstrates the finality requirement should be applied to EPE's claim. As in Insomnia, if a resubmission of the Development Plan that did not include the Arena were denied, or an appeal were denied, those denials would "further define the contours" of EPE's retaliation claim because denial could be evidence of further retaliation. Insomnia, 278 F. App'x at 616.

Because EPE has experienced no immediate injury and any injury would be further defined by EPE's pursuit of its administrative remedies, the finality requirement applies to EPE's claims.

### 2. EPE has not received a final decision, and so its claim fails to satisfy the finality requirement.

The finality requirement can be satisfied by exhaustion of administrative remedies or futility. See Bannum, 958 F.2d at 1363 ("This test, of course, can be met by the exhaustion of remedies. It can also be met by other evidence and can be satisfied prior to compliance with all the required procedures. . . . The 'futility exception' to the threshold requirement of finality . . . is but another way of articulating the analysis explained above."). The City asserts that EPE has not exhausted its administrative remedies. EPE has not claimed that it would be futile to do so.

14

The undisputed evidence shows that EPE had two administrative options. (See D.E. No. 312-1 at 8515-16.) EPE could revise its application such that the Arena was not included as part of the Development Application and resubmit the Development Application for consideration. (Id.) EPE could appeal the decision to the Memphis and Shelby County Board of Adjustment. (Id.)

### a. Failure to pursue either of its remedies renders EPE's claim unripe.

It is not apparent that an appeal would not resolve EPE's harm. For example, in Dubuc, the city attorney directed the Building Zoning Administrator to stop issuing construction permits for plaintiffs' parcel. The issue was not that the permits had yet to be decided. Even if the delayed permits had been constructively denied, the First Amendment retaliation claim would not have been ripe because plaintiffs had not appealed that denial. Dubuc, 406 F. App'x at 990-91. The claim was not ripe because it was "not apparent that [plaintiffs'] issues could not be resolved with further administrative action." Id. at 991.

EPE's claim could also be resolved by resubmitting the Development Plan without inclusion of the Arena. In Insomnia, resubmission of the subdivision plan as a planned development was required to give the city more control. Insomnia, 278 F.

App'x at 615. If the Arena were removed from the Development Plan and the Development Plan were resubmitted, giving the City assurance that there would be no violation of the Arena Use Agreement, "there is a chance [plaintiffs'] proposal will be approved." Insomnia, 278 F. App'x at 615.

### b. Finding EPE's claim unripe promotes policy considerations.

As in Insomnia, three of four policy concerns promoted by finality are furthered by finding that there has been no final decision in this case. Insomnia, 278 F. App'x at 616.

First, "requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record." Id. at 613 (quoting Murphy, 402 F.3d at 348). In this case, a fuller record developing the contours of the injury would help the Court make its determination about whether a "person of ordinary firmness" would be deterred by that injury from continuing protected First Amendment conduct. See Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999).

Second, finality "enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible." Insomnia, 278 F. App'x at 613 (quoting Murphy, 402 F.3d at 348). If relief can be had through the administrative process in this case, which cannot be determined without requiring finality, the Court can avoid "judicial

16

entanglement in [a] constitutional dispute[]." Id. (quoting Murphy, 402 F.3d at 348).

Third, "federalism principles also buttress the finality requirement." Id. (quoting Murphy, 402 F.3d at 348). Requiring a final decision about the land use issue in this case "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." Id. (quoting Murphy, 402 F.3d at 348).

### B. Attorney's Fees

The City argues that it is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). "[W]hile prevailing plaintiffs are entitled to attorneys['] fees under that statute in all but special circumstances, prevailing defendants are entitled to attorneys['] fees much less frequently." Wolfe v. Perry, 412 F.3d 707, 720 (6th Cir. 2005). "[A] prevailing defendant should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Wayne v. Village of Sebring, 36 F.3d 517, 530 (6th Cir. 1994) (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)) (emphasis in original). "Application of these standards requires inquiry into the plaintiffs' basis for bringing suit." Smith v. Smythe-Cramer Co., 754 F.2d 180, 183 (6th Cir. 1985). "The Supreme Court has noted, however, that '[i]n applying these

17

criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" Wolfe, 412 F.3d at 720 (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)).

Although, as the City argues, EPE's allegation that the Arena was not included in the Development Application was inaccurate, EPE's suit is not frivolous, unreasonable, or without foundation. The City relies on Owens v. Swan, 962 F. Supp. 1436 (D. Utah 1997) for the proposition that an inaccurate or untruthful representation to the Court warrants an award of fees to the prevailing defendant. However, in Owens, the inaccurate representation formed the basis for a claim in the complaint. Owens, 962 F. Supp. at 1442 ("[T]he record establishes that plaintiffs' amended complaint . . . was based on a factual allegation which was untrue"). Here, the inaccurate representation was important, but ancillary, to the alleged retaliation that formed the basis for EPE's claim. The Court declines to award attorneys' fees under 42 U.S.C. § 1988(b).

## V. Conclusion

For the forgoing reasons, the Motion to Exclude is **DENIED** as moot, the Motion for Fees is **DENIED**, and the Motion is **GRANTED**.

18

So ordered this  21st  day of October, 2020.

                                                /s/ *Samuel H. Mays, Jr.*
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE